THE STATE v. WINGO, *Appellant.*

1. **Criminal Law**: REASONABLE DOUBT: MURDER. In a criminal prosecution the State must establish the guilt of the accused beyond a reasonable doubt, upon a view of the whole evidence. The case is not divided into two parts, one of guilt asserted by the State, the other of innocence asserted by the accused. There is no shifting of the burden of proof; it remains upon the State throughout the trial. An instruction is, therefore, erroneous which declares that if defendant shot and killed the deceased, the law presumes that it is murder in the second degree, in the absence of proof to the contrary; and it devolves upon the defendant to show, from the evidence in the cause, to the reasonable satisfaction of the jury, that he was guilty of a less crime, or acted in self-defense.

Such an instruction is especially objectionable when the court fails to give the jury a proper instruction as to reasonable doubt.

2. **Murder.** When the evidence for the State, upon a trial for murder, raises the question whether defendant was acting in self-defense, when he committed the homicide, it is error to give the jury an unqualified instruction that if he willfully shot and killed deceased, they should find him guilty of murder in the second degree.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADUS, Judge.

*Luther T. Collier* for appellant.

I. The first instruction, given at the instance of the State, is erroneous, for the following reasons:

1. Because it ignores the question of malice. This is an essential element in the crime of murder in the second degree, and while it may be inferred from other facts proved in the case, still it is an issue that must be passed upon by the jury. *State v. Joeckel,* 44 Mo. 234; *State v. Philips et al.,* 24 Mo. 485.

2. Because the testimony as given by the State develops facts tending to excuse, justify or extenuate the offense charged against the accused, and said instruction withdraws from the jury the consideration of such facts, and shifts the burden of proof from the State to the defendant. *State v. Williamson,* 16 Mo. 396; *State v. Cushing,* 29

Mo. 216; *State v. Murphy*, 11 Am. Rep. 124; *State v. Felter*, 32 Iowa 49; *State v. Putterson*, 12 Am. Rep. 200; *State v. Patterson*, 45 Vt. 308; *Stokes v. The People*, 53 N. Y. 164; *Stokes v. The People*, 13 Am. 492; *Cone v. York*, 9 Met. 116; *Cone v. Webster*, 5 Cush. 305; Wharton's Am. Crim. Law, Sec. 707; *State v. Holme*, 54 Mo. 163.

II.   The third instruction given for the State is wrong, because,

It wrongfully changes the burden of proof.

2.   It deprives the accused of the benefit of any reasonable doubt touching his guilt, and arising from all the evidence in the cause.   13 Am. Rep. 492; *Stokes v. The People*, 53 N. Y. 164; *Maher v. The People*, 10 Mich. 212; *State v. Murphy*, 33 Iowa 270; *State v. Porter*, 34 Iowa 131.

3.   It assumes that the bare act of killing is murder in the second degree, without regard to the facts and cirstances, (in evidence by the State) as to how such killing took place.   *State v. Underwood*, 57 Mo. 49.

*J. L. Smith*, Attorney-General, for the State.

After a careful examination of the transcript, I confess that it is impossible for me to say of what the appellant could possibly complain in the action of the court below. The principles enunciated in the instructions on the part of the State are too well settled to require further notice than a citation of some of the rulings of this court thereon. *State v. Joeckel*, 44 Mo. 234; *State v. Lane*, 64 Mo. 319; *State v. Hundley*, 46 Mo. 414; *State v. Hays*, 23 Mo. 287; *State v. Underwood*, 57 Mo. 40; *State v. Starr*, 38 Mo. 270.

HENRY, J.—That it devolves upon the State to establish by evidence the guilt of the accused beyond a reasonable doubt, will not be controverted.   The defendant, by his plea of not guilty, puts in issue every material allegation in the indictment.   He is not required to plead specially any matter of justification or excuse.   The case is not divided into two parts, one of guilt, asserted by the State, the other of

inncoence, asserted by the accused. He does not plead affirmatively that he is innocent, but negatively that he is not guilty; and on that issue, and that alone, the jury are to try the case throughout.

There is no shifting of the burden of proof. It remains upon the State throughout the trial. The evidence may shift from one side to the other. The State may establish such facts as must result in a conviction, unless the presumption they raise be met by evidence, but still the burden of proof is on the State to establish the guilt of the accused beyond a reasonable doubt. *Ogletree v. State,* 28 Ala. 693; *Meady v. The State,* 5 Iowa 433; *Com. v. McKie,* 1 Gray 61; *State v. Flye,* 26 Me. 316; Wharton's Am. Crim. Law, Sec. 707.

In Stokes' case 53 N. Y. 164, Rapallo, J., said: "The jury must be satisfied on the whole evidence of the guilt of the accused; and it is clear error to charge them when the prosecution has made out a *prima facie* case, and evidence has been introduced tending to show a defense, that they must convict unless they are satisfied of the truth of the defense. Such a charge throws the burden of proof upon the prisoner, and subjects him to conviction though the evidence on his part may have created a reasonable doubt of his guilt. Instead of leaving it to them to determine upon the whole evidence whether his guilt is established beyond a reasonable doubt, it constrains them to convict, unless they are fully satisfied that he has proved his innocence."

Wharton, in his work on American Criminal Law, section 707, says: "The principle may be broadly stated that when the defendant relies on no separate, distinct and independent fact, but confines his defense to the original transaction on which the charge is founded, with its accompanying circumstances, the burden of proof continues throughout with the prosecution."

The same doctrine is held in Massachusetts in all criminal cases, except homicides. In *Com. v. McKie,* 1

Gray 61, it is distinctly and clearly announced, and the distinction betwixt cases of homicide and other criminal cases recognized. No such distinction, however, has obtained in this State, and there can be no good reason why it should prevail anywhere. A distinction between felonies and misdemeanors throwing the burden of proof on a defendant indicted for a misdemeanor, to establish his justification or excuse, after the State has made a *prima facie* case against him, would certainly be more reasonable and more in consonance with the merciful maxims in favor of life and liberty than that which is recognized in Massachusetts. The higher the grade of the offense the stronger the reason why the burden of proof should remain upon the State throughout.

In the *Com. v. York*, 9 Met. 122, *Com. v. Knapp*, 10 Pick. 484, and *Com. v. Webster*, 5 Cush. 296, it was held that when one kills another, it devolves upon the defendant, when the State has proved that he was the slayer, to establish circumstances of justification by such evidence as will outweigh or overbalance the evidence which it is brought to control, while in all other criminal cases a different rule is applied. It is conceded in that case, and in fact all the cases which we have examined, that the burden is not shifted by proof of a voluntary killing when there is excuse or justification apparent on the proof offered in support of the prosecution, or arising out of the circumstances attending the homicide. As stated by Shaw, C. J., in York's case, " when the fact of voluntary homicide is shown, and this is not accompanied with any fact of excuse or extenuation, malice is inferred from the act; this is a fact which may be controlled by proof, but the proof of it lies on the defendant, and if not so proved, it cannot be taken into judicial consideration." In *Com. v. McKie*, *supra*, Bigelow, J., delivering the opinion of the court, observed : " But can the government in such a case, on proving simply the injury to the person, rest their case, and call on defendant to assume the burden of proof and sat-

isfy the jury that it was accidental, or else submit to a conviction? If so, then a criminal charge can always be shown by proving part of a transaction, and the burden of proof can be shifted upon the defendant by a careful management of the case on the part of the goverment, so as to withhold that part of the proof which may bear in his favor." That was an indictment against McKie for assault and battery, and the observations and reasoning of the learned Judge would apply with equal force to a case of homicide where the distinction in that respect, between cases of homicide and other criminal cases does not prevail as in Massachusetts.

The State's interest is not promoted by the conviction and punishment of any of her citizens for crimes of which they are innocent, and it is as much the duty of those who represent her to protect the innocent as to convict the guilty. If the Massachusetts doctrine in regard to homicide be correct, the prosecuting attorney has but to introduce those witnesses who saw nothing to justify the defendant, to throw the burden of proving his innocence upon the defendant, and impose upon him the duty of proving by a preponderance of evidence, as in civil cases, the facts he relies upon for justification or excuse. This is "the careful management of a case on the part of the government" by which the burden is shifted in Massachusetts in prosecutions for homicide.

The defendant is entitled to the benefit of a reasonable doubt of his guilt on the whole case, not only as to whether the case made by the State is open to reasonable doubt, but if the evidence for the State be clear, and, in the absence of other evidence, conclusive, still if the evidence adduced by the accused, whether it establishes the facts relied upon by a preponderance of evidence or not, creates a reasonable doubt of his guilt in the minds of the jury, he is entitled to an acquittal. At no stage of the trial does he stand asserting his innocence. The authorities for this proposition are numerous. All the Massachusetts

cases before cited, except those which were prosecutions for homicides, fully sustain it. To the same effect is *Tweedy v. The State*, 5 Iowa 433; *State v. Murphy*, 33 Iowa 270; 32 Iowa 52; *People v. Stokes*, 53 N. Y. 165; *State v. Merrick*, 19 Me. 400; *State v. Flye*, 26 Me. 13; *Chaffee v. U. S.*, 18 Wallace 507; Wharton's Am. Crim. Law, Sec. 707; *Com. v. Kimball*, 24 Pick. 373; *Com. v. Dana*, 2 Met. 340; *Com. v. Bradford*, 9 Met. 270.

In the case at bar. defendant was indicted for murder, charged with having killed one Gamble, and the evidence was that on the 10th of September, 1876, the dfendant and one Caldwell walked to Grand river from Spring Hill and returned that evening. They had both been drinking, and defendant was so drunk that Caldwell left him on the road side and proceeded home. He reached home about dark, and deceased, who had been there for him in his absence, returned. They had some conversation in regard to the employment of Caldwell by deceased to work· for him, when Caldwell said he had left defendant on the road side, and had promised to return for him. Deceased said he would accompany him. Caldwell walked and deceased rode his horse. When they got to defendant, deceased dismounted and let defendant ride. They returned to Spring Hill and went to Caldwell's house. Defendant said he would lie down on the lounge. He had his gun with him and placed it near the head of the bed. Caldwell and deceased were outside, sitting on a porch which extended nearly across the house. After defendant had been lying down about fifteen minutes, he got up, got his gun, went to the door with the breech of the gun raised as high as his head, and said to Caldwell· and deceased, " God damn you, if you don't come into the house and quit talking about me, I will mash you both into the earth." The deceased said he allowed no man to draw a gun on him, "and fired upon defendant, shooting him in his privates." Gamble was sitting when he fired, and immediately defendant shot and killed him with his gun. There was no testimony

showing that defendant made any attempt to strike Cald-well or deceased with the gun.

Among other instructions, the court gave the follow-ing:

1. That if in the month of September, 1876, in Liv-ingston county, the defendant willfully shot and killed Henry Gamble, the jury will find him guilty of murder in the second degree and assess his punishment, &c.

3. If defendant shot and killed Gamble, the law pre-sumes that it is muder in the second degree, in the absence of proof to the contrary, and it devolves upon the defend-ant, Wingo, to show, from the evidence in the cause, to the reasonable satisfaction of the jury, that he was guilty of a less crime, or acted in self-defense.

The instructions for the accused were on the theory of self-defense. There was an instruction declaring what was a reasonable doubt, but no instruction that if the jury had such doubt of defendant's guilt, he was entitled to an ac-quittal. Applying as tests, the principles above stated, are those instructions such as should have been given? We are not inclined to seek for unsubstantial, metaphysical sub-tleties, or to indulge in hypercriticism of instructions or rulings of the trial courts to screen offenders from merited punishment, but there are certain great principles imbedded in American criminal jurisprudence which secure a fair trial to citizens accused of crime, and which, however often invoked successfully to procure the acquittal of the guilty, cannot be ignored without imperiling the most sacred rights of the citizen. One of them requires that the State shall establish the guilt of the accused be-yond a reasonable doubt. The third instruction declares that if the State prove that defendant killed Gamble, it devolves upon defendant to show, from the evidence, to the reasonable satisfaction of the jury, that he was guilty of a less crime, or acted in self-defense. What is its mean-ing? "It lieth upon the party indicted to prove the sud-den quarrel." "Must prove his case to the satisfaction of

·the jury." " It is incumbent on the prisoner to make out, &c." " The circumstances are to be satisfactorily proved ·by the prisoner." " These various expressions," says Shaw, Ch. J., in York's case, " we consider as meaning the same thing." Again he says, " it is hardly necessary to cite authorities to the very familiar principle that when a fact is to be proved, it must be by evidence sufficient to lead a jury to believe it, and that for this purpose it must outweigh or overbalance the evidence which it is brought to control."

We think that he was correct in stating that these ·various expressions mean the same thing, and, if so, the third instruction shifts the burden upon defendant to prove his innocence. It must be borne in mind that a declaration that if the State has made out a *prima facie* case, it devolves upon the defendant to adduce evidence to repel it, is very different in substance and effect from one which declares that he shall establish the facts upon which he relies as a justification to the satisfaction of the jury—or by a preponderance of evidence, for they are identical in meaning. The difference is as to the amount of evidence. We are not without authority in support of this proposition.

In the *Com. v. McKie, supra,* the defendant was indicted for an assault and battery, and the trial court instructed the jury " that the burden of proof was on the government to satisfy the jury that defendant did strike Eaton with a dangerous weapon, in the manner alleged in the indictment, and that if the government failed in this, they should acquit the prisoner ; but that if this was proved beyond a reasonable doubt, the burden was then on the defendant to satisfy the jury of the justification, to-wit : the spitting in the face of the defendant, which was the only justification contended for or relied upon, and if the jury were not satisfied of the fact relied upon for a justification, but were satisfied that the government had made out the allegation

in the indictment, their verdict must be against the defendant."

The Supreme Court of Massachusetts held this an erroneous instruction, and Bigelow, J., speaking for the court, said: "However the rule may be in cases where the defendant sets up in answer to a criminal charge, some separate, distinct and independent fact or series of facts, not immediately connected with and growing out of the transaction on which the criminal charge is founded, there can be no doubt that in a case like the present, the burden of proof remains on the government throughout to satisfy the jury of the guilt of the defendant." In other words the court held that the instruction shifted the burden of proof on the defendant, and was, for that reason, erroneous.

In the *State v. Porter*, 34 Iowa 139, the jury was instructed as follows: "If you find from the evidence that the defendant killed or caused the death of John Porter, and if you further find that he was acting in self-defense in so doing, it will be your duty to acquit him; or if you find that Porter attacked the defendant, and that the defendant only used such force as was necessary to repel the assault, he would not be guilty as charged, even if death did result therefrom. If, however, you find that the defendant inflicted the blow upon the deceased that caused his death, then the burden of proof is upon the defendant to show that he did it in self-defense." Day, J., speaking for the court, said: "The instruction is clearly erroneous. Proof is the result of evidence. No fact can legally be said to be proved unless it is established by at least a preponderance of evidence. The party upon whom rests the burden of proof must establish the fact respecting which the burden is cast upon him, by at least a preponderance of evidence."

Again, "Under the rule laid down, the defendant must establish, by a preponderance of evidence, that he acted in self-defense, or the jury would be required to find

him guilty; whereas, he is entitled to an acquittal if he shows by the facts attending the commission of the offense, proved either by himself or the State, that there is reasonable doubt that his act was willful. The rule is different where the matter of defense is wholly disconnected from the body of the offense."

In the *State v. Merrick*, 19 Me. 401, Weston, J., speaking for the court, said: "When, by opposing testimony, reasonable doubt is thrown upon a *prima facie* case of guilt it can no longer be said that the party accused is proved guilty beyond a reasonable doubt. The jury are to judge upon the effect of the testimony taken together. It was in our judgment, too strong to instruct the jury that they must convict the accused, unless he had proved, to their reasonable satisfaction, that he came by the sheep otherwise than by stealing."

In the *State v. Flye*, 26 Maine 312, defendant was indicted for forging an order, and the court instructed the jury "that if it was proved that the order came into the hands of defendant unaltered, and came out of his hands altered, the burthen was on the defendant to prove that he did not alter it." The court said, Tenney, J.: "By the instruction, the fact of the alteration between the time when the order came into the defendant's hands and when it came out, threw a burthen on to the defendant. What was that burthen? It was not merely to give such an explanation as would raise a reasonable doubt of his guilt, or even to render it probable that he did not alter it; but to establish as a fact, a truth, a reality, that he did not do it." The court held that the instruction was erroneous, and said: "The prosecuting party is bound to make out his case, in civil proceedings, to the satisfaction of the jury and in criminal, beyond a reasonable doubt. The burthen of proof does not shift from the party upon whom it was originally thrown, upon the production of evidence by him sufficient to make out a *prima facie* case. But when the other party relies upon facts to establish another and

distinct proposition, without attempting to impugn the truth of the evidence against him, it is otherwise. If the result of the case depends upon the establishment of the proposition of the one on whom the burthen was first cast, the burthen remains with him throughout, though the weight of evidence may have shifted from one side to the other, according as each may have adduced fresh proof." Again, " There is a wide distinction between a requirement in a criminal prosecution that the accused shall prove his innocence where a presumption is raised against him, and the necessity of explaining in some degree the fact on which that presumption rests."

Here it may be remarked that the State never makes other than *prima facie* case before the evidence for the defense is heard. No matter how positive and direct the testimony may be, it is still but a *prima facie* case.

*Chaffee v. United States*, 18 Wallace 517, was an action of debt for a statutory penalty, and Field, J., delivering the opinion of court, commenting upon the instruction given, to which exceptions were taken, said: " The purport of all this was to tell the jury that although the defendants must be proved guilty beyond a reasonable doubt, yet, if the government had made out a *prima facie* case against them, not one free from all doubt, but one which disclosed circumstances requiring explanation, and the defendants did not explain, the perplexing question of their guilt need not disturb the minds of the jurors; their silence supplied in the presumptions of the law that full proof which should dispel all reasonable doubt. In other words, the court instructed the jury in substance, that the government need only prove that the defendant was presumptively guilty, and the duty thereupon devolved upon them to establish their innocence, and if they did not, they were guilty beyond a reasonable doubt. We do not think it at all necessary to go into any argument to show the error of this instruction. The error is palpable on its statement. All the authorities condemn it. The instruction sets at

naught established principles, and justifies the criticism of counsel, that it substantially withdrew from defendant their constitutional right to a trial by jury, and converted what at law was intended for their protection, the right to refuse to testify, into the machinery for their sure destruction." He cites in support of the views of the court, *Doty v. The State,* 7 Blackford 427; *State v. Flye,* 26 Me. 312: *Com. v. McKie,* 1 Gray 61.

The instructions condemned in the several cases above cited, are in substance identical with the third instruction for the State in the case at bar, and we think the court erred in giving it, especially as there was no instruction declaring to the jury that if they had a reasonable doubt of his guilt, on the whole case, they should acquit the prisoner.

The first instruction should have been qualified. The evidence for the State raised a question as to whether the defendant made an assault upon deceased, which justified the deceased in shooting him, and whether defendant was acting in self-defense when he shot the deceased; and all the cases hold that when that is so, an unqualified instruction, such as we are considering, should not be given.

The judgment is reversed and the cause remanded. All concur. NORTON, J., and HOUGH, J., concur in the result.

REVERSED.