**STATE of Missouri, Respondent,**

v.

**Ronald Claude MINNIS, Appellant.**

**No. 55465.**

Supreme Court of Missouri, Division No. 2.

Sept. 25, 1972.

Motion for Rehearing or Transfer to Court En Banc Denied Nov. 13, 1972.

John C. Danforth, Atty. Gen., G. Michael ·O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Raymond F. McNally, Jr., St. Louis, for appellant.

CHARLES SHANGLER, Special Judge.

A jury found Ronald Claude Minnis guilty of murder in the second degree and thereby rejected his justification of self-defense. Defendant was sentenced to a term of twenty years in the penitentiary. On this appeal he claims error in the self-

defense submission and in refusing proffered Instruction A.

We relate only that evidence necessary to properly define and determine the issues presented. For that purpose, we are relegated essentially to defendant's evidence, for there was no proof of self-defense in the state's case.

In the early morning of July 6, 1969, defendant and his father-in-law, and co-indictee, Mattie Harper Frasher, were walking northerly along Broadway in the City of St. Louis. They had just left a tavern in the vicinity of defendant's home where Frasher had drunk heavily. The defendant himself was keeping a watchful eye on Frasher and for that reason had at most two beers to drink. The defendant's jaw, for which he had a protective concern, was broken and wired as a result of an industrial accident. This condition made it difficult to use. The defendant and Frasher had reached a parking lot on the southeast corner of Curtois and Broadway. About this time, the decedent, Robert Grab, was driving his car along Broadway. A beer bottle had been thrown at his car and, for some reason, he believed it had come from the direction of the defendant and Frasher. Grab drove his car into the parking lot and began to scuffle with Frasher, striking him in the face and knocking him down. The defendant was going to ask Grab "what was going on", but Grab seemed so angry that defendant decided to take off running to his home nearby. Since the front door was kept locked, he went through the gangway which adjoined his building, around to the back yard and into the kitchen. He slammed the door shut. The kitchen door did not have a lock on it.

He stood there panting, his jaw in pain. A beer bottle came through the side kitchen window. Then the door burst open and Grab appeared. Defendant entreated: "Hey, mister, please get out of this house." Grab replied: "I am going to beat hell out of you." Grab then came at the defendant,

he had nothing in his hands. The defendant retreated around the kitchen table, but Grab kept coming on. The defendant picked up a kitchen knife, took a swipe at him, and said again: "Mister, please get out of the house." Grab answered: "You're going to pay for this", and came at defendant "real fast". The defendant lunged at him, but was knocked down to the floor "at the same time with his weight", and then Grab, as though stunned, ran out the back door. Defendant got up, not knowing if he had hurt Grab. He then heard a commotion outside the house. He knew his father-in-law was still out there, so he picked up another knife from the table and ran onto the gangway, flailing the knives. Several of the state's witnesses were attracted to the gangway by the sound of groaning. They saw Grab lying there, bleeding from the stomach, with Frasher kneeling on him and defendant standing over him with two butcher knives. When Frasher released Grab, he got up and joined the witnesses in running towards their cars with the defendant in pursuit. Grab collapsed near one of those cars. The police were called and arrived shortly thereafter.

At the time of this episode, defendant was six feet one inch tall, weighed about 170 pounds and was 25 years old. Frasher was five feet seven inches in height, weighed about 140 pounds and was about 48 years old. Grab was five feet nine inches in height, weighed about 185 pounds and was about 43 years old.

The trial court, by Instruction No. 6, undertook to instruct the jury on the presumption of innocence accorded defendant and on the state's burden of proving defendant's guilty beyond a reasonable doubt. The court also undertook to submit the issue of lawful self-defense as justification for the homicide by this Instruction No. 4 of which defendant complains:

"The Court instructs the Jury that if you find and believe from the evidence in this case, beyond a reasonable doubt,

that the Defendant stabbed the deceased, ROBERT GRAB, and that at that time the Defendant had reasonable cause to believe and did believe there was a design upon the part of the deceased to do Defendant some great personal injury or great bodily harm and that there was a reasonable cause for Defendant to believe there was immediate danger of such design being accomplished; and that to avert such apprehended danger Defendant stabbed deceased and *that at the time Defendant did so Defendant had reasonable cause to believe and did believe it necessary to use said knife* in the way Defendant did to protect himself from such apprehended danger, then and in that event the stabbing was not felonious but was justifiable and you should find the Defendant not guilty upon the ground of *necessary self defense.*

"It is not necessary to this defense that the danger should be actual or real or that the danger should have been impending or immediately about to fall. *All that is necessary is that Defendant had reasonable cause to believe and did believe these facts.*

"But before you find the Defendant not guilty on the ground of self defense you ought to find and believe from all the evidence in this case that the fear of the Defendant for his life or personal safety was reasonable. Whether the facts constituting such reasonable cause existed at the time, you are to determine from all the evidence in this case, and unless the facts constituting such reasonable cause are found by you from all the evidence in this case, you should not find the Defendant not guilty on the ground of self defense even though you may find and believe from all the evidence that Defendant thought he was in danger.

"Therefore, the Court instructs you that if you find and believe from all the evidence in this case, beyond a reasonable doubt, that the Defendant, RON-

ALD CLAUDE MINNIS, stabbed and killed the deceased when the Defendant did not have reasonable cause to believe that deceased intended to do Defendant some great personal injury or great bodily harm, then there is no self defense in the case and you should not find the Defendant not guilty on that ground." (Emphasis supplied.)

■ It is the defendant's contention that the underscored wording of the instruction required, in order to acquit on the theory of self-defense, not only that defendant had reasonable cause to believe it necessary to use the knife but that the facts constituting such reasonable cause actually existed at the time. Thus, appellant contends, Instruction No. 4 denied him the complete benefit of the doctrine of self-defense because it did not include a statement that he was entitled to act on appearances. The appearances doctrine operates to justify a person to act in self-defense although it later proves the appearances were false. State v. Sloan, 47 Mo. 604, 612; State v. Greaves, 243 Mo. 540, 147 S.W. 973, 975 [4, 5]; State v. Darling, 202 Mo. 150, 100 S.W. 631, 635. Actually in legal effect, the second paragraph of Instruction No. 4 authorized a finding of self-defense on the basis of appearances, that the reasonable cause and necessity for the killing be viewed as the circumstances appeared to the defendant. That paragraph is a virtual rescript of the language construed in State v. Miller, 346 Mo. 846, 143 S.W.2d 241, 243 [3] and held to be equivalent to a declaration justifying a defendant to act in self-defense on appearances. And, the court concluded, "in the absence of a more specific request (such a self-defense instruction) is sufficient." See, also, State v. Traylor, 339 Mo. 943, 98 S.W.2d 628, 631 [2]. Later, in State v. Demaree, Mo., 362 S.W.2d 500, l. c. 502 [1–3], it was held that "a defendant charged with murder is entitled in self-defense to act on appearances, and, *if the evidence justifies it,* he is also entitled, if he requests it, to an instruction embodying that right in some

form in a modifying instruction." (Emphasis supplied.)

In his tendered Instruction A, the defendant does not hypothesize any evidence establishing any appearance which could justify his belief that grave bodily harm was impending, nor was there any other than the incipient physical assault defendant described in his testimony and which is the implicit basis for the self-defense submission in Instruction No. 4. There was no other circumstance for the defendant to act upon, no other source of imminent danger. The deceased undertook to do what he declared he would do, "beat the hell out of (defendant)." There was no feigned conduct, no dissembled weapon, nor any other circumstance creating an appearance of impending danger of great bodily harm when none existed. The deceased came at defendant with empty hands and the only danger defendant feared was the physical assault threatened by the deceased. The right to act upon appearances was not proved and Instruction A was properly refused. State v. Demaree, Mo., 362 S.W. 2d 500, 503 [3].

Appellant's other contention of error is that Instruction No. 4 submitting self-defense is inherently contradictory in that it requires the jury to find the elements of self-defense beyond a reasonable doubt, thus casting that burden upon the defendant, and at the same time casts on the state the burden of proving beyond a reasonable doubt that defendant did not act in self-defense. The confusion is compounded, appellant argues, when the submissions of Instruction No. 4 are considered together with Instruction No. 6 which declares that the defendant is presumed to be innocent until his guilty has been established by the state beyond a reasonable doubt. It is a confusion which would have been dispelled, claims the appellant, had his tender of Instruction A on self-defense been accepted by the trial court.

Quite clearly, a defendant has no burden on the issue of self-defense. All that is required to raise the issue is that there be a prima facie showing, from evidence produced by either defendant or the state, of the elements of self-defense. When that issue is raised, the burden rests on the state to prove beyond a reasonable doubt that the killing was not done in self-defense. State v. Davis, 342 Mo. 594, 116 S.W.2d 110, 112 [6]; State v. Strawther, 342 Mo. 618, 116 S.W.2d 133, 138 [8, 9]; State v. Holt, Mo., 434 S.W. 2d 576, 579 [5]. An instruction which requires the defendant in a criminal case to prove beyond a reasonable doubt, or merely to establish to the satisfaction of the jury, facts upon which he relies as justification for his acts, therefore, " 'shifts the burden of proof to the defendant and is an unwarranted limitation of his right of self-defense.' " State v. Robinson, Mo., 255 S.W.2d 798, 799 [1]. Such an instruction is prejudicially erroneous because, in shifting the burden of proof, on this essential element of the state's case, it denies to defendant the full effect of the presumption of innocence. It subjects the defendant to conviction if he has not proved justification for the homicide—and therefore his innocence—although his evidence may create a reasonable doubt of his guilt. In other words, it denies to a defendant the benefit of reasonable doubt of his guilt on the whole case. State v. Malone, 327 Mo. 1217, 39 S.W.2d 786, 791 [6]; Wharton on Homicide, 3rd Edition, p. 550. A criminal case "is not divided into two parts, one of guilt, asserted by the State, the other of innocence, asserted by the accused." State v. Wingo, 66 Mo. 181, 182. The burden of establishing the guilt of the defendant, which—when substantial evidence of self-defense appears—includes that the homicide was without justification, rests with the state throughout and never shifts to the defendant. State v. Robinson, Mo., 255 S.W.2d 798, 799 [2, 3]; State v. Strawther, 342 Mo. 618, 116 S.W.2d 133, 139 [8, 9]; State v. Malone, 327 Mo. 1217, 39 S. W.2d 786, 791 [6].

Instruction No. 4 tenders the issue of self-defense. It charges the jury to ac-

quit the defendant Minnis if the elements of self-defense, which it defines, are proved beyond a reasonable doubt. Although it does not explicitly throw upon the defendant the burden of proving self-defense, that is the sense of it, and would be so understood by any reasonable juror since the finding is obviously for the benefit of the defendant who would be exonerated thereby. See: State v. Davis, 342 Mo. 594, 116 S.W.2d 110, 112 [3]. Instruction No. 4 is prejudicially erroneous because its first paragraph unlawfully devolves the burden of proof upon the defendant. Instead of leaving it to the jury to determine upon the whole case whether the defendant's guilt is established beyond a reasonable doubt, it authorizes them to convict unless they find he has proved his innocence beyond a reasonable doubt. It is erroneous also, as appellant contends, because the first paragraph of Instruction No. 4 is inconsistent with the last paragraph which requires the finding that defendant did not act in self-defense be made by proof beyond a reasonable doubt and, also, because that first paragraph conflicts with the submissions in Instruction No. 6 that the presumption of innocence accorded defendant is not overcome except by evidence establishing guilt from all the evidence beyond a reasonable doubt, which

burden rests on the state. While a lawyer could, with some patience and difficulty, harmonize this ravel of contradictory directions, it is not to be expected of a jury of laymen.

■ We need not decide whether Instruction A is a proper statement of self-defense or, if given, would have reconciled the discordant elements of Instruction No. 4 and Instruction No. 6. It is by no means an ideal statement of the law on the subject and it would not be instructive to consider it further. On a retrial, the error we now correct will be avoided by the use of recommended Missouri Criminal Pattern Instruction 2.40 (and attentive consideration of the Committee's Notes), dealing with self-defense in homicide cases, prepared by a special Committee of the Missouri Bar. The recommended pattern instruction is a correct statement of the law of self-defense in homicide cases, clearly states the propositions necessary to such a finding, in language that is readily understandable. The first paragraph of recommended · Instruction 2.40 submits that "(t)he state has the burden of proving beyond a reasonable doubt that defendant did not act in lawful self-defense", a direction which would have avoided the error committed had it been given at the trial.[1]

1. This paragraph of recommended pattern Instruction 2.40 appears to adopt the perfectly sensible rationale of State v. Robinson, Mo., 255 S.W.2d 798, l. c. 799 [2, 3] that, in general, "an instruction upon the subject of self-defense should be coupled with an instruction on reasonable doubt as to the defensive matter . . . [and] must correctly cover the subject of burden of proof. 41 C.J.S. Homicide §§ 378, 380, 384; annotation 120 A.L.R. 591." This holding was later determined as "not represent(ing) the Missouri Law" in State v. Dill, Mo., 282 S.W.2d 456, 460 [3]. This latter pronouncement has been followed since. See, e. g., State v. Richardson, Mo., 321 S.W.2d 423, 428 [11, 12]; State v. Tellis, Mo., 310 S.W.2d 862, 865 [4, 5]; State v. McQuerry, Mo., 406 S.W.2d 624, 628 [6, 7]. This holding in Dill, and the cases which follow it, rests on the principle of law that (282 S.W.2d

l. c. 461 [4, 5]), "(i)n criminal cases, as well as in civil cases, all the instructions must be considered together . . . . The jury was specifically told here that the burden was on the state to prove defendant's *guilt* beyond a reasonable doubt; this fairly included and embraced all issues, including that of 'disproving' the asserted claim of self-defense, so long as there was nothing inconsistent or misleading in the self-defense instruction." This proposition is not as rigidly logical as it appears in the statement of it. A homicide case in which the self-defense justification is shown is not an ordinary criminal case. That defense, because it arises from the same transaction on which the charge is founded, is an element of the crime charged and must be proved beyond a reasonable doubt, along with every other element of the offense. State v. Wingo, 66 Mo. 181, 182. In order to convict, therefore, a jury must not

The state relies on State v. Holt, Mo., 434 S.W.2d 576 to support its contention that Instruction No. 4 does not shift the burden of proof to defendant on the issue of self-defense. From what appears in the text of the opinion, neither the instruction nor the critical language there construed is comparable to our own. In Holt (1. c. 579 [4, 5]), the jury was instructed that if it found beyond a reasonable doubt defendant had assaulted and killed the deceased with a knife " '*but* that in so doing, the defendant, Calvin Holt, acted in self-defense as that term is defined in other instructions, then you will find the defendant, Calvin Holt, not guilty.' " (Emphasis ours.) In response to the defendant's claim that the reasonable doubt language shifted to him the burden of proving self-defense, the court determined that the conjunction "but" had the effect of restricting the first portion of the instruction so that the reasonable doubt qualification as to the finding of the homicide did not carry over to the subsequent portion of the instruction submitting self-defense.

Instruction No. 4 is different from the instruction considered and construed in *Holt* in two vital respects. Unlike the instruction in *Holt,* Instruction No. 4 not only submits self-defense, but also defines it. Unlike *Holt,* the requirement of proof beyond a reasonable doubt is conjoined to what follows, in this case the elements of self-defense, by "and", not "but". "And" means, of course, "added to or linked to"[2] and in the context of Instruction No. 4 has the effect of expanding the application of "proof beyond a reasonable doubt" to include the language to which it is thus joined, in this case, the elements of self-defense. An attentive and reasonable reading of the first paragraph of Instruction No. 4 leads to the conclusion that the elements of self-defense are to be proved beyond a reasonable doubt and that the burden for such proof was on the defendant who would benefit by that finding. Neither the balance of Instruction No. 4 nor any other submission given redresses this fundamental error.

The judgment is reversed and the cause is remanded for new trial.

All of the Judges concur.

only find *affirmatively* from all the evidence beyond a reasonable doubt that defendant was guilty of the offense, but must also find *negatively* from all the evidence beyond a reasonable doubt that the killing was not justified. It is not entirely clear how a lay jury can be confidently held to understand, without further instruction, that an affirmative finding of guilt may not be returned unless the state has proved beyond a reasonable doubt that the defendant did not act in self-defense, particularly under a verdict-director (in this case, Instruction No. 1) which, typically, authorizes conviction "unless you find the Defendant not guilty on the grounds of self-defense . . . as defined in other instructions given you", when those other instructions do not explicitly require the state to prove that the killing was not done in self-defense, and that such proof must be beyond a reasonable doubt on all the evidence.

In repudiating the *Robinson* holding, the *Dill* court observed (282 S.W.2d 1. c. 460 [3]) that the authorities cited in *Robinson* dealt with cases "where the self-defense instruction, in and of itself, was construed as placing an undue burden on the defendant, and was held erroneous for that reason." The sense of *Robinson* is that a defendant who may not have an instruction placing on the state the burden of proving absence of self-defense beyond a reasonable doubt is unduly burdened. That also is the meaning we find in State v. Malone, 327 Mo. 1217, 39 S.W.2d 786; 41 C.J.S. Homicide § 384. On a retrial, should the evidence develop as it has on this record, recommended pattern Instruction 2.40 would be appropriate.

2. See Webster's New International Dictionary, page 80.