STATE of Missouri, Plaintiff-Respondent,

v.

Bernard Dean ROBINSON, Defendant-Appellant.

No. 35724.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 12, 1974.

Charles D. Kitchin, Public Defender, John Bauer, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Paul Allred, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

Defendant-appellant Bernard Dean Robinson was charged, tried and found guilty of manslaughter [1] by a jury which assessed his punishment at ten years. After motion for new trial was overruled and allocution granted, sentence was imposed. He appeals. We affirm.

Appellant-Robinson (sometimes referred to as Smokey) was, on January 18, 1973, indicted by the Grand Jurors of the City of St. Louis with (1) murder in the first degree in that he killed one Overtis Bailey and (2) assault with malice [2] in that he shot Samuel Bailey, Overtis Bailey's brother. He was arraigned, pleaded not guilty and stood trial commencing August 27, 1973.

Although the record is long and sometimes confusing, it is not necessary to recite all of the complex detailed facts since the appellant does not question the sufficiency of the evidence and raises certain legal questions on this appeal.

Basically, a jury could find the following. On New Year's Eve, December 31, 1972, a combination birthday party—New Year's Eve Party was held at the apartment of Mrs. Rena Eason in the City of St. Louis. Numerous guests were invited including the defendant, Robinson, Overtis (sometimes referred to as Mike or Michael), and his brother Samuel (Sam). Other persons were present at one time or another during the evening including Judy Cline Munroe and Darrell Cline, Mrs. Eason's daughter and son. Some or all of the guests were invited by a person other than Mrs. Eason. Food and drink were prepared, and various persons contributed a small cost for the party. Sometime prior to midnight, at about 10:00 p. m., Robinson was having a general conversation with Judy Cline concerning some of the personal effects he owned—"a Cadillac and all kind of clothes and stuff." Samuel Bailey interrupted the conversation and remarked, "You don't own any of that," or, "You are lying." Robinson replied, "I wasn't talking to you," and Samuel said, "I know you're not, but I'm talking to you." Later, after midnight, at about 1:30 a. m., Sam was asked to apologize and went to the kitchen where the defendant was. Soon thereafter Sam's brother Overtis also entered the kitchen. Mrs. Eason entered the kitchen and indicated she did not want any "fighting in my kitchen." According to Samuel, when they were in the kitchen, Robinson shoved Overtis and pulled a gun. Sam told Robinson that if "my brother died we was both going to die, and that's when the shooting started." According to the defendant's testimony, the brothers came into the kitchen, and Overtis inquired why Robinson wanted Overtis' brother to apologize. Robinson replied "for interrupting my conversation." Robinson testified that they started maneuvering to block the exits and that Overtis was "hitting his fist in the palm of his hand" which was demonstrated to the jury at the request of defense counsel. Robinson inquired whether they were "going to jump me." Sam came toward Robinson.

Robinson pulled a pistol from his pocket, a shot was fired and Samuel was hit in the

---

1. § 559.070, RSMo., 1969.

2. § 559.180, RSMo., 1969.

head—it "crested" his head. Samuel ran away, diving through a "glass" "fiberglass" door. Overtis "jumped" at Robinson, a struggle ensued during which Overtis had his arms around the waist of Robinson, enclosing his arms with his head in Robinson's stomach. Four spent shells were found. Robinson was hit in both legs, and Overtis was fatally wounded. The police were called, Samuel was taken to the hospital, Robinson went to the hospital with the help of a friend, and Overtis was dead on arrival at the hospital. During cross-examination of Mrs. Eason, the State's first witness, defense counsel asked her whether Overtis Bailey was a "pretty big fellow." She answered in the affirmative. "Was he a lot bigger than Bernard [Robinson]?" She replied, "Yes." On redirect examination, the assistant circuit attorney in this first question (?) on redirect, stated: "The biggest man in the room —and this is not funny—when you walked in there as far as power was concerned was the man holding that gun?" Objection and request that it be stricken were made. The objection and request were sustained, the jury was instructed to strike the statement and to disregard it. A motion for mistrial made by the defense was overruled.

During the cross-examination of the defendant-Robinson, who took the stand in his own behalf, and while the assistant circuit attorney was questioning him concerning the relative positions of the bodies of Overtis and Robinson during the struggle

and where Overtis' arms were and Robinson's hands, the state's attorney stated:

"Q. The truth of the matter is, as he [Overtis] went falling back to the floor after the first time, he was laying with his face down; you fired."

This was objected to, the objection was sustained, the jury instructed to disregard it, but a motion for mistrial was denied.

Also during the cross-examination of the defendant, in an attempt to determine the relative positions of Overtis and Robinson during the struggle, the attorney for the State requested Robinson to "Show me, then, how you were." The Court asked the defendant, "Can you [Robinson] demonstrate." Robinson replied that he could. The court then stated: "All right. If—he says he can demonstrate, I'll permit him to demonstrate." The attorney for the state then requested that Robinson show the jury how he was on the floor. Defense counsel objected to the in-court demonstration for the reason, "There's no foundation." No motion for mistrial was made. The court replied, "There's been in-court demonstration on both sides. I don't know why we should cease right now."

At the conclusion of the case, the jury was instructed on murder first degree, murder second degree, manslaughter and self-defense as to the death of Overtis, and assault with malice as to Samuel. One of the instructions of which defendant complains relating to self-defense was Instruction No. 5.[3] The jury found defendant

3. "INSTRUCTION NO. 5. In reference to Counts I and II the Court instructs the jury that the right to defend oneself from danger is a right to which a person may have recourse under certain circumstances and conditions in order to prevent and apprehended injury to himself by another. Therefore, if you believe and find from the evidence in this case that at the time the defendant shot Overtis Bailey and Sam Bailey, if you find he did so shoot them, he had reasonable cause to believe and did believe that the said Overtis Bailey and Sam Bailey were about to take his life or to do him some great personal injury, and if you further believe and find

from the evidence that he had reasonable cause to believe and did believe that it was necessary for him to shoot said Overtis Bailey and Sam Bailey in order to protect himself from such danger, and that he had reasonable cause to believe and did believe that it was necessary to use such means to protect himself, then he ought to be acquitted on the ground of self-defense. Whether the defendant had reasonable grounds to believe that such danger existed, and whether he shot at Overtis Bailey and Sam Bailey in the honest belief that it was necessary for the protection of his life or person, are questions that you must determine from all the evidence

guilty of manslaughter on Count I and acquitted him on the assault charge, Count II. Following conviction, the defendant filed a motion for new trial alleging that the court erred in overruling his motions for mistrial because (1) of the references made by the assistant circuit attorney during the re-direct examination of Mrs. Eason and during the cross-examination of the defendant, and (2) because of the in-court demonstration during the defendant's cross-examination. No allegation of error was made concerning Instruction No. 5.

After the motion for new trial was overruled and allocution granted, the defendant was sentenced to the department of corrections for a period of ten years.

On this appeal, defendant raises three points: (1) the court committed "plain error" in giving the self-defense instruction because it failed to allocate the burden of proof properly, (2) the court erred in overruling the motions for mistrial relating to the references made by the assistant circuit attorney during re-direct examination of Mrs. Eason and the defendant because they were prejudicial and constituted testimony by the State's attorney, and (3) the court erred in overruling defendant's motion for a mistrial[4] because of the in-court demonstration during the defendant's cross-examination because it was beyond the scope of the direct examination and in violation of his guaranty against self-incrimination.

The principal point raised by the appellant is that the instruction on self-defense, Instruction No. 5, improperly shifted the burden of proof from the State[5] to the defendant. Although no specific objection to the instruction was made either at trial or in the motion for new trial, appellant requests us to consider the matter as "plain error"[6] under Rule 27.20(c). Appellant relies on State v. Tindall, 496 S.W.2d 267 (Mo.App.1973); State v. Robinson, 255 S.W.2d 798 (Mo.1953); Cf. State v. Dill, 282 S.W.2d 456, 460 (Mo.1955); and State v. Minnis, 486 S.W.2d 280 (Mo.1972).

■ Even though the defendant did not preserve this point for review, and we would be justified in not reviewing this point, we will review the record as "particularly appropriate." There is, however, no prejudicial error in Instruction No. 5. This instruction, except for the names of the parties and the particular offense, is identical to the self-defense instruction given in State v. Tindall, supra. The Kansas City District held, "We cannot agree that this instruction in terms shifts the burden of proof on the issue of self-defense from the state . . . to the defendant." 496 S.W.2d at 270. The court distinguished other decisions including State v. Minnis, supra. The trial court here gave Instruction No. 1, a presumption of innocence and burden of proof, similar to the instruction in State v. Tindall, supra. Instructions are to be considered together. State v. Vainikos, 366 S.W.2d 423, 425 (Mo. banc 1963). Because the jury is deemed to read and understand the instructions as a single charge, an instruction which requires a finding of guilt beyond a

---

in the case. Athough the defendant may have really believed himself to be in danger, yet he cannot be acquitted on the ground of self-defense unless it further appears from the evidence that he had reasonable cause for such belief. On the other hand, even if no danger existed, yet if the defendant had reasonable cause to believe and did believe that it existed, he would be justified in acting upon such belief. If you believe from the evidence that the defendant shot at Overtis Bailey and Sam Bailey unnecessarily, if you find he did shoot them, when he did not have reasonable cause to believe that the said Overtis Bailey

and Sam Bailey were then and there about to kill him or do him great bodily harm or personal injury, then there is no self-defense in the case and you cannot acquit the defendant on that ground."

4. No motion for mistrial was in fact made.

5. MAI–CR 2.40, effective January 1, 1974, now specifically places the burden on the state that the defendant did not act in self-defense.

6. See State v. Broomfield, 510 S.W.2d 843, 1973 (Mo.App.).

reasonable doubt sufficiently submits the state's burden on the issue of self-defense. While the Kansas City District in *Tindall* did criticize the continued validity of such instruction, it did not find prejudicial error or a violation of the fundamental rights of the defendant to a fair trial. 496 S.W.2d at 271. See also State v. Cooksey, 499 S.W.2d 485, 490 (Mo.1973) [7], and State v. Nance, 508 S.W.2d 517, 519–520 (Mo.App. 1974). Unlike State v. Minnis, supra, this instruction did not authorize a finding that the defendant was guilty unless the jury found the elements of self-defense "beyond a reasonable doubt." We rule this point against defendant.

Appellant's other points do not rise to the level of prejudicial error. The appellant complains that the court should have granted his motions for mistrial. The declaration of a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances or where the incident is so grievous that the prejudicial effect can be removed in no other way. Whether remarks of counsel require a mistrial and the discharge of the jury rest largely in the discretion of the trial court who observed the incident and who is in a better position than an appellate court to evaluate the situation and the possibility of its removal by action short of mistrial. State v. Heather, 498 S.W.2d 300, 303 (Mo.App.1973). The trial court took prompt action—the objections were sustained, the remarks were stricken and the jury instructed to disregard them. We cannot conclude the trial court abused its discretion in denying a mistrial.

As to the in-court demonstration. This was objected to but no motion for mistrial was made. This point is not preserved for review. State v. Woodard, 499 S.W.2d 553, 560 (Mo.App.1973). However, the demonstration concerning the relative positions of Overtis and appellant and appellant's position during the affray cannot be prejudicial and do not violate defendant's Fifth Amendment rights. Defense counsel, on direct examination of the defendant, inquired where Overtis' arms were and where the defendant's hands were during the scuffle, hence the demonstration was not beyond the scope of the direct testimony.

Several demonstrations concerning actions of various parties and witnesses were made throughout. As to the demonstration complained of, the defendant was asked by the court whether he could demonstrate the situation and the defendant replied that he could.

There was no violation of defendant's guaranty against self-incrimination. Traditionally, this guaranty applies to testimonial compulsion and does not preclude a demonstration when the defendant takes the witness stand. Gilbert v. California, 388 U.S. 263, 266, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (1967); California v. Byers, 402 U.S. 424, 431, 91 S.Ct. 1535, 29 L.Ed. 2d 9 (1971); United States v. Dionisio, 410 U.S. 1, 5–6, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); State v. Dean, 400 S.W.2d 413, 416 (Mo.1966); State v. Hill, 328 S.W.2d 656, 660–661 (Mo.1959).

We have reviewed the total record, the briefs and decisions relied upon by the appellant. We find none of the authorities relied upon are dispositive of this cause.

Finding no prejudicial error, the judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.

---

7. "The court gave an instruction which covered the presumption of innocence, reasonable doubt of guilt, and the burden rests on the state to prove guilt beyond a reasonable doubt. The court was not required to give a self-defense instruction which combined with it a burden of proof or reasonable doubt instruction." State v. Cooksey, 499 S.W.2d at 490.