**STATE of Missouri, Respondent,**

v.

**Julius SIMMONS, Appellant.**

No. 51582.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 3, 1987.

Henry B. Robertson, Public Defender, St. Louis, for appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant appeals from the judgment of the trial court, entered on a jury verdict, convicting defendant of second degree murder, first degree assault, and armed criminal action. We reverse.

It is undisputed that on August 7, 1985 at around 2:00 a.m., defendant shot and killed Theodore Freeman and wounded Maurice Terry while the two sat in Terry's car on the lot of a St. Louis gas station. Freeman occupied the passenger seat and Terry sat in the driver's seat.

Defendant and the victim Freeman had a history of confrontations. On April 29, 1985, defendant was shot twice by a man wearing a ski mask. Based on the clothing worn by the assailant, defendant identified Freeman as the man who shot him. Freeman was arrested in this incident.

Thereafter, while defendant was recuperating from his gunshot wounds, he heard a man outside his hospital room door ask another man: "Kill this man?" The men ran when defendant jumped from his hospital bed. He then saw Freeman standing at the nurse's station. Defendant's family hired a private security guard to protect him during the remainder of his hospital stay. Defendant testified that in 1985, Freeman and his associates had put a $20,-000 contract out on his life.

In August 1980, defendant was shot nine times by an unidentified assailant. This incident was supposedly in retaliation for the killing of another man, for which defendant contended he was wrongly accused. Defendant testified that Freeman and his associates were responsible for the shooting of defendant in 1980.

On August 7, 1985, the night in question, a witness at the scene testified he saw defendant approach the car occupied by victims while holding a revolver down at his side. Two witnesses testified defend-

ant stood at the driver's side door of the victim's car and said: "Don't try to get out of the car [*expletive*]." Defendant then started shooting.

Terry, the driver of the car, testified that when Freeman saw defendant at the car door, Freeman reached toward the driver seat and grabbed the gear shift, ordering Terry to back the car up. As Terry turned toward defendant he saw defendant pull a gun. Terry fell toward the car door but was shot in the arm. Terry saw defendant's gun come into the car window and past him towards Freeman. Three more shots were fired and then two more into Terry. Terry testified that when defendant began shooting, Freeman leaned over on the car seat and tried to hide behind Terry.

Terry was shot in the arm twice and in the right flank. Freeman died from a gunshot wound to the head. He was also shot in the finger, neck, shoulder, and chest. Phencyclidine was found in Freeman's system and morphine was found in his blood. Terry testified that Freeman was high on "wack" during the night in question.

Defendant raised the defenses of justification as to the death of Freeman and accident as to the wounding of Terry. According to defendant, when he approached the cashier's window of the gas station, he saw Freeman standing at Terry's car. Freeman stared at defendant. Defendant returned to his car and attempted to leave the lot. To reach the exit, defendant had to back up his car. Defendant testified that victims' car cut him off, blocking his egress from the lot. Defendant got out of his car and approached the car occupied by victims while holding his hands up in the air. Defendant wanted to ask Freeman why he wanted to kill him. Defendant carried a revolver in his waistband. He told Freeman he wanted to talk to him and Freeman allegedly responded: "I'm going to kill you." Freeman then reached under the driver seat and defendant could see the handle and barrel of a gun in Freeman's hand. Defendant testified that he began shooting at Freeman in self-defense. Defendant then fled the scene.

The police responded within minutes after the incident but found no gun. Terry testified that he did not have a gun, and as far as he knew, Freeman did not have a gun. Terry did testify, however, that when Freeman saw defendant standing at the car door, he reached towards the driver seat and grabbed the gear shift. A witness testified that after the shooting he saw Terry exit the automobile. Terry had nothing in his hands. He walked straight to the cashier's booth and sat on the curb.

On appeal, defendant contends the trial court erred in refusing to accept defendant's offered instruction on self-defense which included a paragraph instructing on the right to act on reasonable appearances that later prove to be false. Defendant contends his testimony that he saw a gun in victim's hand together with the fact that no gun was found supported the false appearances instruction. It is defendant's contention that the prior acts of violence against defendant, Freeman's alleged threats to defendant during the incident, the fact that Freeman was "high" on phencyclidine at the time, and the sudden movement by Freeman in reaching towards the driver seat and grasping the gear shift, support the reasonableness of the facts as they appeared to defendant. As we reverse on this point, we need not address defendant's other allegations of error.

■ We are mindful of our mandated appellate standard which requires that in examining a record for evidence of self-defense, we must consider the evidence in a light most favorable to defendant. *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984). We are compelled to reverse and remand the cause.

■ The "appearances doctrine" justifies a person to act in self-defense even though the appearances later prove to be false. *State v. Minnis*, 486 S.W.2d 280, 283 (Mo. 1972). The doctrine is embodied in paragraph 5 of the self-defense instruction MAI–CR2d No. 2.41.1:

(5. If the defendant reasonably believed it was necessary to use the amount of physical force he used in order

to protect himself from [name of victim], it is of no consequence that the appearances turned out to be false. . . .

Defendant specifically requested that this paragraph be included in the self-defense instruction but that request was denied.

■ The notes on use following MAI–CR2d No. 2.41.1 are not very helpful on the issue of when the appearances instruction must be given: "The inclusion or omission of . . . material in paragraph 5 will depend upon the evidence in each case." Note on Use 6, MAI–CR2d No. 2.41.1. The volume of comments accompanying MAI–CR (1st ed.), however, provides an extensive explanation on the use of the self-defense instruction. The comments provide that, rather than erroneously refusing a request for the false appearances instruction and preparing the ground for reversal, "paragraph No. 5 must be included, whether requested or not, if there is *any* evidence that 'appearances later turned out to be false.'" Richardson, *Self-Defense: "Perfect" and "Imperfect" In Homicide*, MAI–CR Comments, at 41 (emphasis added).

Further, the prejudicial effect of failure to give the appearances instruction when warranted is evidenced by the fact that the right to act on appearances that later prove to be false is now a mandatory component of the self-defense instruction under MAI–

CR3d No. 306.06. The right to act on reasonable appearances is now included in the definition of "reasonable belief":

■ As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

MAI–CR3d No. 306.06.

The facts of this case entitled defendant to the appearances instruction, emphasizing the right to act on reasonable appearances that later prove to be false. The credibility of defendant's testimony that he believed victim drew a gun and the reasonableness of such a belief were questions for the jury. The judgment is reversed and the cause is remanded for new trial.

SMITH, P.J., and REINHARD, J., concur.