STATE of Missouri, (Plaintiff) Respondent,

v.

Catherine COOKSEY, (Defendant) Appellant.

No. 56229.

Supreme Court of Missouri,
Division No. 2.

Sept. 10, 1973.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 8, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Murray Stone, St. Louis, for appellant.

HENLEY, Judge.

Catherine Cooksey (hereinafter defendant), charged with assault with intent to kill with malice aforethought (§ 559.180 [1]), was found guilty by a jury of the offense of assault with intent to kill without malice (§ 559.190), and sentenced to imprisonment for a term of three years. The notice of appeal was filed before January 1, 1972. We affirm.[2]

The jury reasonably could find from the evidence that at about 1:30 a. m. on September 6, 1969, on the sidewalk on the north side of Natural Bridge Road near its intersection with Euclid Avenue in the City of St. Louis, defendant, with intent to kill, shot Marvin Chambers in the back with a .38 caliber revolver.

The shooting was the last in a series of incidents or occurrences which began a few hours before on the night of September 5. Defendant owned and operated a cocktail lounge known as "December John's Bar" and lived nearby at the Northwestern Hotel. Marvin Chambers also lived at that hotel. They had been friends for two years and had dated some. At about 10:30

---

1. Section references are to RSMo 1969 and V.A.M.S.

2. This opinion is written on recent reassignment.

p. m. on September 5, he went to her room to talk to her about $50 she owed him and this resulted in an argument. He left her room within a few minutes and they next met two or three hours later on Natural Bridge between the hotel and her bar. Their argument over the $50 was resumed and resulted in a fight in which he struck her several times with his fists and knocked her down. Two or three passers-by stopped the fight by pulling him off her and she got up and went to her bar. There she picked up a loaded shotgun and immediately left to walk back toward the hotel. It was on this trip back that she not only shot Chambers with a pistol but somehow Isidore Brown, an innocent bystander, was shot in the leg with her shotgun.

Marvin Chambers testified that immediately before she shot him, he was looking back over his shoulder and saw her about ten feet behind him step out from a wall with a shotgun in her hand; that she fired the shotgun, but it missed him and he did not see where the shot struck; that she immediately threw the shotgun down, drew a pistol from her waist, and shot him in the back before he could turn to grab her; that he grabbed her arms before she could fire again and they struggled and fell to the ground; that a policeman in the neighborhood arrived while he and defendant were wrestling over the pistol and the officer disarmed her; that the time period between the shotgun blast and the pistol shot was approximately two or three seconds.

Isidore Brown testified that as he stepped out of a tavern (not defendant's) onto the sidewalk on Natural Bridge at about 1:20 a. m. on September 6, 1969, he was shot in the leg by a shotgun; that he did not see the shotgun fired and at no time saw it in the hands of anyone; that he jumped behind a parked car and looked in the direction from which the shot had been fired and saw a woman shoot a man in the back with a pistol; that it was a matter of three or four seconds between his being hit with fire from a shotgun and the man being shot by the woman; that after being shot in the back, the man grabbed the woman's arms and they struggled and fell to the ground; that he did not know either the woman or the man at the time, but later learned they were defendant and Marvin Chambers.

Defendant testified that before the shooting Chambers attacked and beat her with his fists, knocked her down, and kicked her when she was enroute to her cocktail lounge; that she was bloody and her hair and clothes were in disarray; that she went in her bar, got her shotgun for protection, and was walking back to her hotel to clean up and change clothes when Chambers attacked her again; that he hit her and caused her to drop the shotgun, and it fired when it fell to the walk; that he knocked her down, jumped on her and continued to beat her; that he knocked her down several times; that as she was getting up from about the third knock-down someone put a a pistol in her hand; that she pulled the trigger and shot Chambers, but she "wasn't trying to kill him"; that after her arrest she saw a man later identified as Isidore Brown standing in the street on one leg beside a car and his other leg "was mangling and bloody."

Two criminal charges were filed against defendant as a result of the occurrence in which Brown and Chambers were shot. One is this case, circuit court No. 2401–R, for the shooting of Chambers with a pistol. The other is circuit court No. 2402–R, for the shooting of Brown with a shotgun. The Brown case was tried first and resulted in an acquittal.

Defendant filed a pre-trial motion to dismiss the charge or, in the alternative, to limit the evidence in this case to that involving the shooting of Chambers with a pistol and to exclude all evidence of the shooting of Brown with a shotgun. As grounds for her motion, defendant alleged this charge arises out of the same incident as the shooting of Brown for which she was acquitted, therefore: (1) to try this case would be to put the defendant in jeopardy for a second time, * * * contrary

to the 5th and 14th Amendments of the Constitution of the United States * * *"; (2) "the State is collaterally estopped from bringing [this] * * * cause to trial; and, (3) that, "[i]n the alternative, the State is estopped from introducing certain evidence involving a Shot Gun, because said evidence was the basis for the trial in Cause No. 2402–R * * *." The motion was overruled.

The first point briefed by defendant is that "[t]he court erred in allowing the state to introduce evidence relative to the use of a shotgun and the wounds which a witness, Isidore Brown, received from said shotgun," because she was acquitted of the charge of assault upon Brown, and the doctrine of collateral estoppel as enunciated in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) operates to render inadmissible evidence of the prior shooting.

Ashe v. Swenson, supra, does not speak to the question of the admissibility of evidence; it speaks only to the question of double jeopardy. In *Ashe*, the Supreme Court of the United States gave the doctrine of collateral estoppel constitutional status as a part of the Fifth Amendment's guarantee against double jeopardy. Other cases cited by defendant on this point are not applicable for the same reason *Ashe* is not applicable.

■ Defendant's point that the court erred in admitting evidence of the other offense is not preserved for review for the very basic reason that she made no objection to the evidence when it was offered. Not only did she not object, she actively joined in the presentation of this evidence to the jury by producing most of it herself by her cross-examination of the state's witnesses and by her own testimony. In these circumstances, she may not be heard to charge prejudicial error in the admission of evidence of the shotgun shooting of Brown. State v. Brookshire, 353 S.W.2d 681, 688 [17] (Mo.1962); State v. Franklin, 448 S.W.2d 583 (Mo.1970). Furthermore, the facts of the shooting of Chambers and Brown are so interrelated and inextricably interwoven that it would be all but impossible to tell the story of one without some evidence of the other creeping in.

■ Defendant's next point is that the court erred in failing to give an instruction on common assault, because, she says, her testimony that when she fired the pistol she "wasn't trying to kill [Chambers]" precludes a finding of intent to kill and requires the giving of a common assault instruction.

In State v. Bevineau, 460 S.W.2d 683 (Mo.1970), defendant was charged with and convicted of assault with intent to kill with malice aforethought. Defendant testified that he fired a shot at the officer hoping to daze him, but was not trying to kill him. Defendant contended that the court erred in failing to give an instruction on assault without malice and common assault. The court said (460 S.W.2d at 688): "Our cases hold that in criminal cases involving personal violence, where intention, motive and reason of the defendant are essential elements of the crime, the defendant may testify directly thereto. State v. Chamineak, Mo.Sup., 343 S.W.2d 153, 160–161 [12]; State v. Fletcher, Mo.Sup., 190 S.W. 317, 321; State v. Palmer, 88 Mo. 568, 572. However, denial of intention to kill does not necessarily require an instruction for a lesser degree of the offense charged when 'the statements of defendant * * *, incumbered with the physical facts and conduct of defendant, * * * [are] unreasonable and inconsistent with the experience of mankind * * *.' State v. Nelson, 118 Mo. 124, 23 S.W. 1088. See State v. Musick, 101 Mo. 260, 14 S.W. 212, 214–215; State v. Turlington, 102 Mo. 642, 15 S.W. 141, 146."

Here, defendant shot at Chambers with a shotgun and missed, and she admits that when someone handed her the pistol she fired it immediately as she was getting out and up from under Chambers who, according to her testimony, was still beating

her with his fists. In the circumstances of this case, her denial of an intent to kill Chambers is so inconsistent with and contrary to her actions and common experience that no instruction on common assault was required.

The last two points briefed by defendant are considered together. They relate to the giving and refusal of instructions on the right of self-defense. Defendant's principal contention in these points is that instruction 5, given by the court, was prejudicially erroneous in that it does not refer to, and therefore denied her, "the right to act on appearances." Instruction 5 is as follows:

"The Court instructs the jury that the right to defend one's self from danger is a right to which a person may have recourse under certain circumstances and conditions, in order to prevent an apprehended injury to himself by another. Therefore, if you find and believe from the evidence in this case at the time mentioned in the evidence defendant Catherine Cooksey made an assault on Marvin Chambers, with a pistol, if you find she did so and at said time she had reasonable cause to believe and did believe that Marvin Chambers was about to do her great personal injury, and if you further find and believe from the evidence that the defendant had reasonable cause to believe and did believe that it was necessary for her to so assault Marvin Chambers, in order to protect herself from such danger, and that she had reasonable cause to believe and did believe that it was necessary to use such means to protect herself, then she ought to be acquitted on the ground of self-defense. Whether the defendant had reasonable grounds to believe that such danger existed, and whether she made an assault on Marvin Chambers, in the honest belief that it was necessary for the protection of her person, are questions which you must determine from all the evidence in the case. Although defendant may have readily believed herself to be in danger, yet she cannot be acquitted on the ground of self-defense unless it further

appears from the evidence that she had reasonable cause for such belief. On the other hand, even if no real danger existed, yet if defendant had reasonable cause to believe and did believe that it existed, she would be justified in acting upon such belief. If you believe from the evidence that defendant Catherine Cooksey made an assault on Marvin Chambers unnecessarily, if you find she did so assault Marvin Chambers when she did not have reasonable ground to believe that Marvin Chambers was then about to cause her great personal injury, then there is no self-defense in the case and you cannot acquit the defendant on that ground."

Defendant asserts that the first sentence of this instruction does in fact inform the jury that she had a right to act on appearances, but she argues that this is the only place in the instruction where the jury was so informed and that this sentence does not rectify the error she claims. Actually, in legal effect, these two sentences in the instruction also inform the jury that she had a right to act on appearances: "Although defendant may have readily believed herself to be in danger, yet she cannot be acquitted on the ground of self-defense unless it appears from the evidence that she had reasonable cause for such belief. On the other hand, even if no real danger existed, yet if defendant had reasonable cause to believe and did believe that it existed she would be justified in acting upon such belief * * *." Referring to the last above-quoted sentence in a similar instruction which was under attack on the same ground, the court said in State v. Traylor, 339 Mo. 943, 98 S.W.2d 628, at loc. cit. 631 (1936): "True, it [the instruction] does not use the term 'appearances' * * *, but it [the sentence] * * * is substantially equivalent to the stock phrase usually employed in that connection * * *." See also: State v. Minnis, 486 S.W.2d 280, 283–4 [1, 2] (Mo.1972), and cases there cited. The instruction is not erroneous; "* * * it does not in terms take away or deny to the [defendant] the right to act

on appearances." State v. Demaree, 362 S.W.2d 500, 503 (Mo.1962).

In State v. Demaree, supra, a murder case, the court said (loc. cit. 502), that " * * * a defendant * * * is entitled in self-defense to act on appearances, and, if the evidence justifies it, he is also entitled, if he requests it, to an instruction embodying that right in some form in a modifying instruction * * *." The following words (loc. cit. 503) expressing the conclusion of the court in *Demaree*, supra, are particularly appropriate in this case: "Here the court's instructions apply to every phase of the evidence, *and there was no appearance of any supposed danger, other than that on which the instructions are based.*"

■ Defendant, in her proffered instruction A on self-defense (for the refusal of which she claims error), did not hypothesize any evidence establishing any appearance which would justify a belief that grave bodily harm was immediately impending, nor was there any such evidence other than the physical assault about which she testified and which is the basis for the self-defense instruction given by the court. Under the evidence in this case there was no circumstance or appearance of immediate danger which required an instruction embodying specifically, "the right to act on appearances" in a modifying instruction. The court did not err in refusing instruction A. State v. Demaree, supra; State v. Minnis, supra.

■■ Defendant also contends that instruction 5 places the burden on her to prove self-defense beyond a reasonable doubt, whereas her instruction A would have directed the jury to give her the benefit of any reasonable doubt. The court gave an instruction which covered the presumption of innocence, reasonable doubt of guilt, and the burden which rests on the state to prove guilt beyond a reasonable doubt. The court was not required to give a self-defense instruction which combined with it a burden of proof or reasonable

doubt instruction. State v. Dill, 282 S.W.2d 456, 460–461[4] (Mo.1955); State v. Tellis, 310 S.W.2d 862, 864–865 [3, 4] (Mo. 1958).

We hold that the self-defense instruction given does not shift the burden of proof and place the burden on defendant to prove her claim of self-defense. This instruction is to be considered with the other instructions on presumption of innocence, reasonable doubt, and burden of proof; and, when so considered, it includes the state's burden of "disproving" the asserted claim of self-defense.

The judgment is affirmed.

DONNELLY, C. J., MORGAN, J., and MOSS, Special Judge, concur.

FINCH, J., not a member of Division when cause was submitted.