**STATE of Missouri, Respondent,**

v.

**Melvin CANNADY, Appellant.**

**No. 45333.**

Missouri Court of Appeals,
Eastern District.

April 24, 1984.

John Ashcroft, Atty. Gen., Jefferson City, for respondent.

Nick A. Zotos, St. Louis, for appellant.

SIMON, Judge.

Defendant, Melvin Cannady, was tried for robbery in the first degree, § 569.020 RSMo 1978, felonious restraint, § 565.120 RSMo 1978, and forcible rape, § 566.030 RSMo 1978, in the Circuit Court of the City of St. Louis. The jury found him guilty of stealing from a person, § 570.030 RSMo 1978, a lesser included offense of robbery, and felonious restraint but could not reach a verdict on the forcible rape count and a

mistrial was declared as to it. Defendant appealed the stealing and felonious restraint convictions, contending that the introduction into evidence of a rape lab kit without establishing a chain of custody was prejudicial. We affirmed the judgment holding that the disputed evidence related only to the rape count which ended in a mistrial and, therefore, defendant was not prejudiced. *State v. Cannady,* 655 S.W.2d 826 (Mo.App.1983).

Defendant was subsequently tried and convicted on the forcible rape charge and was sentenced to twenty-five (25) years concurrent with the sentences on the stealing and felonious restraint. The jury found, pursuant to the verdict directing. instruction, that defendant displayed a deadly weapon in a threatening manner in the course of the rape.

On appeal, defendant contends that the trial court erred in overruling his objection to the admission of the gun and to testimony concerning the gun prior to and during the rape because the evidence violated his right not to be placed twice in jeopardy as provided by the Fifth Amendment. He argues that the prior jury had acquitted him of the contemporaneous robbery with a deadly weapon by finding him guilty of the lesser included offense of stealing from a person and, therefore, concluded no weapon had been used in the continuous episode of stealing and rape.

The evidence in this trial is substantially identical with that introduced in the first trial. In the early evening, the victim left a grocery store, and was putting her purchases in her car on the store parking lot. The defendant, Melvin Cannady, walked up to her, opened his coat and pointed a gun at her. She was told to give him money and she gave him about $60 in cash and some food stamps.

The defendant told her to get into her car. She entered the front seat from the driver's side and sat next to the passenger's door in the front seat. He entered the car and sat next to her. At this time, two other men joined the defendant and sat in the front seat of the car. The defendant

gave the gun to the man seated next to him. The men then drove the car to a nearby vacant lot with the gun pointed at the victim. Upon arriving at the vacant lot, the two men, who had joined the defendant, jumped into the back seat.

The man with the gun was now in the back seat and pointed the gun at the victim's head and demanded money. The victim told him that she had already given her money to the defendant. With the gun pointed at the victim's head, the defendant went through her coat pockets and found additional food stamps. He then searched inside the victim's bra for additional money, but found none.

With the gun still pointed at the victim's head by one of the men in the back seat, the defendant put his hand inside the victim's shirt and felt her breasts. He then put his hand inside her pants. At this point, the men in the back seat said, "no, don't, we ain't got time." Defendant made the victim lie down on the front seat of the car. He pulled the pants off one of her legs, removed her underpants, and proceeded to rape her. While the rape was in progress, one of the two men in the back seat pulled the victim's leg over the back of the seat. The two men in the back seat had left the car while the rape was in progress. A witness, who lived next to the lot, became suspicious when she saw the victim's car and the men standing around it on the lot and she called the police. The police arrived, the defendant's two accomplices warned the defendant and then the accomplices fled; they were caught shortly afterwards. The defendant told the victim to tell the police that she was with him or otherwise he would kill her. A police officer asked the defendant and the victim to get out of the car. The defendant told the officer that they had just been robbed by the two men who had fled. The officer asked the victim if she was alright and she replied that she was with the defendant.

The officer drove the victim and defendant to the police station. When the two were separated, the victim explained what had occurred and the defendant was arrested and made a statement admitting he raped and robbed the victim.

In the first trial, the charge of robbery in the first degree was submitted under MAI 23.02, which required the jury to find:

"that in the course of stealing the [victim's] property, the defendant displayed or threatened the use of what appeared to be a deadly weapon,"

The jury was also instructed on the lesser and included offenses of robbery in the second degree and stealing from a person. As noted, the instruction on robbery in the first degree required findings of appropriation, a threat of physical force to induce relinquishment of possession and display or threat to use what appeared to be a deadly weapon. The instruction on robbery in the second degree required findings of appropriation and physical force inducing relinquishment of the property, and the instruction on stealing from a person required findings of appropriation, intent to permanently deprive and a physical taking. The difference between stealing from a person and robbery in the first degree, significant here, is that the stealing charge simply required a physical taking while the robbery charge required threat of physical force with the display of or threat to use what appears to be a deadly weapon. According to defendant, since the jury found him guilty of the lesser offense of stealing, the jury necessarily found him not guilty of the greater offenses of robbery first and second degree; and, thus, in effect, found that he did not use a gun while appropriating the victim's property.

In the second trial, the forcible rape offense was submitted under MAI 20.02.1 which required the jury to find:

"from the evidence beyond a reasonable doubt that the defendant, in the course of this offense [rape] displayed a deadly weapon in a threatening manner, then you will find the defendant guilty of rape."

Defendant contends the state was estopped from adducing the evidence supporting this instruction; i.e. the state should have been precluded from presenting evidence show-

ing his use of a gun during the course of the stealing and the rape. More specifically, defendant argues that because the jury in the first trial found he did not use a gun during the stealing, a contrary finding during the rape is precluded.

In support of his contention, defendant relies on *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and *State v. Lewis,* 599 S.W.2d 94, 98[9] (Mo.App. 1980). Defendant's reliance is misplaced.

 *Ashe* explained collateral estoppel by stating, "[i]t means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit." 397 U.S. at 443, 90 S.Ct. at 1194. Further, where an acquittal is based upon a general verdict, the court must review the record of the prior proceeding, considering the pleadings, evidence, charge and other relevant matter, and determine whether a rational jury could have grounded its verdict upon an issue other than the one which is sought to be foreclosed from consideration. *Ashe,* supra, at 444, 90 S.Ct. at 1194.

 We have examined the record of the prior trial and taken into account the pleadings, evidence, charges and other relevant matter. From this, we conclude defendant's acquittal on robbery in the first degree simply means the jury did not believe that threat of physical force with a deadly weapon was used to take the victim's property. However, the rape was separate and distinct in time from the stealing. The first trial answered, in the negative, the question of whether a gun was used in the stealing. It is possible that defendant did utilize a gun during the rape, even in light of a finding by a jury that no gun was used during the stealing. Thus, the issue of whether a gun was used by defendant during the rape was not necessarily determined in his favor previously, and the state is not estopped from introducing evidence to show the use of a gun in the course of the rape. Accordingly, defendant's reliance on the doctrine of collateral estoppel is misplaced as to the rape.

However, a more difficult issue arises, namely, whether the evidence of the robbery, of which defendant was previously acquitted, may be utilized in the prosecution for forcible rape, a separate crime arising out of the same occurrence, where the ultimate issue previously litigated is not a necessary element of the current prosecution. This question is not clearly answered by *Ashe.*

 *Ashe* held that collateral estoppel is embodied in the Fifth Amendment's guarantee against double jeopardy and is applicable to the states. 397 U.S. at 442–45, 90 S.Ct. at 1193–95. Pure double jeopardy is "claim preclusion", whereas collateral estoppel is "issue preclusion." Double jeopardy protection is threefold in that it bars: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction, and (3) multiple punishment for the same offense. *State v. Grays,* 629 S.W.2d 466, 468 (Mo.App.1981); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Collateral estoppel, on the other hand, prevents relitigation of the same issue between the same parties.

 In *Ashe,* six men engaged in a poker game were robbed by three or four masked gunmen. Defendant was tried for the robbery of one of the poker players and acquitted. The state tried defendant for the robbery of another one of the players and was convicted. In reviewing the prior proceeding, the court concluded that the jury's verdict of acquittal was solely grounded on a finding that defendant was not one of the masked gunmen. Accordingly, once a jury had determined this, "the state could not present the same or different identification *evidence* in a second prosecution for the robbery of [another player] in the hope that a different jury might find the *evidence* more convincing." *Ashe,* 397 U.S. at 446, 90 S.Ct. at 1195. (emphasis added)

*Ashe* differs from defendant's situation in that the ultimate issue of fact determined in Ashe's first trial was an ultimate

issue of fact in the second trial, namely, whether Ashe was in fact one of the masked gunmen. In defendant's situation, the ultimate issue of fact determined in the first trial, whether defendant utilized a gun during the stealing, is mutually exclusive of the ultimate issue of fact in the second trial, whether defendant utilized a gun during the rape. The ultimate issue of fact found in defendant's favor in the first trial is merely an evidentiary fact in the second trial. Our brethren in the federal circuits have split over whether the *Ashe* doctrine of collateral estoppel bars the relitigation of an ultimate fact, and not an evidentiary fact. *Compare, Wingate v. Wainwright,* 464 F.2d 209, 212–214 (5th Cir.1972) (barring the use of evidentiary facts); *U.S. v. Mespoulede,* 597 F.2d 329, 334–336 (2nd Cir.1979) (same); *U.S. v. Keller,* 624 F.2d 1154, 1157–1160 (3rd Cir.1980) (same) with *U.S. v. Riley,* 684 F.2d 542, 545, 546 (8th Cir.1982) (permitting use of evidentiary facts); *U.S. v. Castro-Castro,* 464 F.2d 336, 337 (9th Cir.1972) (same); *Oliphant v. Koehler,* 594 F.2d 547, 554–555 (6th Cir. 1979) (same).

We believe the former group of federal cases barring use of evidentiary facts fits more comfortably with the *Ashe* holding. Our research, however, has uncovered *State v. Cooksey,* 499 S.W.2d 485 (Mo. 1973), in which our Supreme Court strongly indicated that the *Ashe* holding does not preclude use of evidentiary facts but only the use of ultimate facts.

Catherine Cooksey was initially tried for an assault on Brown, an innocent bystander, and was acquitted. Cooksey was then tried for the assault on Chambers and convicted. The facts of the incidents are as follows: Cooksey and Chambers were friends and lived at the same hotel. One evening, Chambers went to Cooksey's room to inquire about money Cooksey owed him. This resulted in an argument and Chambers left. They saw each other a few hours later on a street between the hotel and a lounge owned by Cooksey. The argument resumed and resulted in Chambers striking Cooksey with his fists and knocking her down. Cooksey subsequently got back on her feet and went to her lounge to get a shotgun. She left to walk back to the hotel, saw Chambers and fired the shotgun. It missed him but hit the bystander, Brown. Cooksey, within seconds, drew a pistol and fired at Chambers, hitting him.

On appeal, Cooksey, relying on *Ashe,* supra, contended, "[t]he court erred in allowing the state to introduce evidence relative to the use of a shotgun and the wounds which a witness, Isidore Brown, received from said shotgun," because she was acquitted of the charge of assault upon Brown and the doctrine of collateral estoppel in *Ashe* precludes the admission of evidence of the prior shooting. *Cooksey,* supra, at 487–88.

The court rejected Cooksey's contention on the grounds that: (1) defendant did not preserve the point for review in that no objection was made to the evidence when introduced; (2) defendant joined in the presentation of the evidence through her cross-examination of the state's witnesses and her own testimony; and (3) the fact of the assaults were so "interrelated and inextricably interwoven that it would be all but impossible to tell the story of one without some evidence of the other creeping in." *Cooksey,* 499 S.W.2d at 488. Further, in arriving at its conclusion, the court stated, at 488:

> *Ashe v. Swenson,* supra, does not speak to the question of the admissibility of evidence; it speaks only to the question of double jeopardy. In *Ashe,* the Supreme Court of the United States gave the doctrine of collateral estoppel constitutional status as a part of the Fifth Amendment's guarantee against double jeopardy. Other cases cited by defendant on this point are not applicable for the same reason *Ashe* is not applicable.

The Court's statement about *Ashe,* in light of the factual circumstances in *Cooksey,* must be directed to the issue of whether collateral estoppel precludes use of evidentiary facts. The issue of whether Cooksey assaulted Brown with the shotgun was an ultimate issue of fact in the first trial.

That issue was not an ultimate issue of fact in the second trial since the court stated that the assault charge in that trial was "for the shooting of Chambers with a pistol." *Cooksey*, supra, at 487. Therefore, evidence of the shotgun shooting is an evidentiary fact in the second trial and not an ultimate issue of fact. If the assault charge concerning Chambers was for the shotgun discharge which missed him, then the issue of whether Cooksey aimed and discharged a shotgun at Chambers which hit Brown might be an ultimate issue of fact in both trials. Thus, the *Ashe* rationale would apply. Because the Court in *Cooksey*, supra, found the issue of whether Cooksey assaulted Brown with the shotgun was not an ultimate issue of fact in the trial for an assault on Chambers and further stated *Ashe* not to be applicable, we interpret the case to be in accord with those circuits allowing the reuse of evidentiary facts. This would allow, in defendant's trial for rape, evidence of his use of a gun during the stealing since such evidence does not establish an ultimate issue of fact in the rape trial. Of course, such evidence remains subject to applicable rules of evidence.

Defendant also relies on *State v. Lewis*, 599 S.W.2d 94, 98[9]. In *Lewis*, defendant was initially prosecuted for possession of burglar tools and acquitted. One element of the offense is intent to use the tools to commit a burglary. The prosecution attempted to prove a completed burglary by defendant to support the element, although it could have merely tried to prove a general intent to use the tools for burglary. In examining the prior record, the court concluded the jury's acquittal was based upon a finding that defendant did not commit the burglary. Defendant was then prosecuted for the actual burglary and convicted. The conviction was reversed because of the issue preclusion concept embodied in the doctrine of collateral estoppel.

Because of the prosecutorial strategy in *Lewis*, the ultimate issue of fact in the first trial, whether Lewis had committed the burglary, was the ultimate issue in the second trial, whether Lewis had committed the burglary. The court stated, at 97[4]:

The theme that collateral estoppel precludes conviction of the defendant for burglary after acquittal for possession of burglary tools derives .... from the identity of the evidence and of the intent to commit burglary common to both cases.... The reason for the coincidence of the evidence is that the prosecutor chose to prove an accomplished burglary to convict for the unlawful possession of burglary tools.

The court then went on to hold that the prosecution for burglary should be barred and reversed the conviction. *Lewis*, at 100[12].

*Lewis* is more comparable to *Ashe* than to the defendant's case in that the ultimate issue of fact decided in the first trial in Lewis' favor was an ultimate issue of fact in the subsequent prosecution such that the second prosecution is barred. This is different than a situation, which is present here, where the ultimate issue of fact decided in defendant's favor is not an ultimate issue of fact in the second trial. The question is not whether the second prosecution is barred but is whether evidence can be introduced in the second trial which is inconsistent with the jury's finding in the first. Therefore, *Lewis* is not applicable to defendant's case.

Accordingly, we are constrained to follow the apparent mandate of our Supreme Court in *Cooksey*, supra, and hold that the trial court did not err, based upon the doctrine of collateral estoppel, in admitting into evidence facts tending to show defendant's use of a gun during the stealing. Because of our holding, it is unnecessary to address the state's contention and the authority cited in support.

Judgment affirmed.

CRIST, P.J., and PUDLOWSKI, J., concur.