**STATE of Missouri, ex rel. Stacey HINES, Relator,**

v.

**The Honorable James L. SANDERS, Respondent.**

**No. 58490.**

Missouri Court of Appeals,
Eastern District,
Writ Division Three.

Jan. 29, 1991.

David Jeffrey Ferman, St. Louis, for relator.

George A. Peach II, George William Draper II, St. Louis, for respondent.

SATZ, Presiding Judge.

This is an action in prohibition. Relator, Mr. Stacey Hines, is being prosecuted in the underlying action, in the City of St. Louis, for two counts of rape and one count of sodomy. Previously, relator was prosecuted for and acquitted of kidnapping and armed criminal action in St. Louis County. Both prosecutions arose out of one incident on November 22, 1987, in which relator allegedly kidnapped a woman, the complainant, at gunpoint and took her from the County to the City, where he allegedly raped and sodomized her.

Relator seeks our writ to prohibit the respondent judge from further proceedings in the underlying action. We have issued our preliminary writ and now make it permanent.

Relator bases his request for our writ on two aspects of the Double Jeopardy Clause of the Fifth Amendment: collateral estoppel and being twice put in jeopardy for the same offense.

As to collateral estoppel, he argues that his prior acquittal on the kidnapping charge means that the jury necessarily found the complainant consented to his conduct. This finding, according to relator, amounts to a determination of an ultimate fact the state must prove in the rape and

sodomy charges in the underlying action barring the State from relitigating the issue.

As to double jeopardy, he argues that, in the underlying action, the State will be able to prove the complainant's lack of consent only by proving that conduct of his for which he was previously prosecuted. The Double Jeopardy Clause, he argues, bars the State from proving an element of the present rape and sodomy charges—lack of consent—by the same conduct for which he was previously prosecuted.

We agree with relator's collateral estoppel argument and do not reach his double jeopardy argument.[1]

### Collateral Estoppel

The Double Jeopardy Clause of the Fifth Amendment, incorporated in and made applicable to the states by the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969), provides that no one shall be "subject for the same offence to be twice put in jeopardy of life and limb". The Clause provides three separate protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.
>
> *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665 (1969).

We are concerned with the first protection here.

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that collateral estoppel, issue preclusion, is part of the Fifth Amendment's guarantee against double jeopardy. 397 U.S. at 445, 90 S.Ct. at 1195. The Court said "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194.

In *Ashe*, the defendant was first acquitted of the robbery of one of six poker players. Subsequently, he was convicted of the robbery of another one of these players. The Court noted that the "single rationally conceivable issue in dispute before the jury" in the first trial was whether the defendant was one of the robbers. *Id.* at 445, 90 S.Ct. at 1195. The Court concluded "the jury by its verdict [of acquittal] found he [was] not." *Id.* Therefore, the State could not retry the issue of whether the defendant was one of the robbers. *Id.*

To determine what issues a jury must have decided when it has reached a general verdict, a court must

> "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings."
>
> *Id.*

We have examined the record of relator's prior trial. In that case, the jury must have acquitted relator by finding the complainant consented to her removal from St. Louis County. This finding would necessarily mean the jury did not believe forcible compulsion was used. Forcible compulsion

---

**1.** Defendant's double jeopardy argument rests on the "same conduct" test recently adopted by a five to four majority of the United States Supreme Court in *Grady v. Corbin*, 495 U.S. —, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

In his excellent article, *The Prohibition of Successive Prosecutions for the Same Offense: In Search of a Definition*, 71 Iowa L.R. 323 (1986), Professor George Thomas III, University of Rutgers Law School, lucidly describes and evaluates the development and application of various tests which may be or were used by the Supreme Court to determine whether successive prosecutions for violations of two different criminal statutes are prosecutions for the "same offense". With prescience, Professor Thomas urged the adoption of a "necessary element test" which is strikingly similar to the "same conduct" test adopted in *Grady*.

is also an element of rape and sodomy. Under the facts of this case, the forcible compulsion of the rape and sodomy charges arises out of and is a continuation of the forcible compulsion from the alleged kidnapping. The jury's determination that there was no forcible compulsion in the kidnapping precludes a subsequent determination that there was forcible compulsion in the rape and sodomy.

## Facts

The record of the first trial before us consists of a transcript of the testimony of the complainant, of other state witnesses, and of the relator, the verdict directing instructions on the kidnapping and armed criminal action charges, and the jury verdicts of not guilty on each of these charges.

According to the complainant, on her way home from work at 3:00–4:00 a.m., she stopped her car on the north side of Interstate 44 in St. Louis County, because she had "to go to the bathroom". She got out of her car, locked it and "went to the bush and bathroom." When she returned, she learned she had locked her keys in the car, with the motor running.

While the complainant was attempting to get into her car, relator and another man stopped in a car and asked if she needed help. She asked them whether they had a coat hanger. They did not. She then entered their car, and, with relator driving, the three of them went looking for a coat hanger to help open her car. After an unsuccessful stop at a fast food restaurant, the complainant obtained a hanger at a service station.

Relator then drove them back on to Interstate 44, but he drove past the exit ramp to the complainant's car. Complainant told him to exit on the ramp to Laclede Station Road which, apparently, would have provided the quickest access to her car, parked on the north side of the Interstate. Relator drove past this exit ramp, and, when complainant asked relator to return her to her car, he produced a gun and told her to "shut the fuck up or he was going to fuck [her] up." He continued to drive past the County–City boundary, exited from the Interstate in the City, drove around for awhile and then relator and the other man each raped and sodomized the complainant.

Subsequently, relator drove the complainant back to her car. When they arrived, the complainant saw a number of police cars around her car. She "panicked" and "told [relator] just to drive [her] home. [She] was just afraid." She was scared, and, thus, when relator asked her for her phone number, she gave it to him. Relator stopped the car at her house. She "ran into the house. [Her] mother was on the phone. [She] told her she was raped and just went hysterical". This was complainant's testimony at trial.

However, when complainant was originally questioned by the police, she told a different story. She told them she was waved off the road by someone in a car with a gun, not that she had stopped on the road for her own purposes. Moreover, she failed to tell them about the search for the hanger. The police learned of the search for the hanger from their own investigation.

When complainant was asked at trial why she told this initial story to the police, she said she was embarrassed that she "had stopped [her] car and left her keys in it to go to the bathroom" and was also embarrassed that she "willingly got into a car with two black guys."

According to relator's testimony, he and a friend were driving along Interstate 44 when he saw a woman waving for help. He "pulled over" and stopped. He asked the woman what was wrong, and she replied that she had locked herself out of her car. He offered to take her home, but she asked him to help look for a hanger. While driving around looking for the hanger, the woman saw a marijuana butt in his ashtray and she asked him if he had any cocaine. He answered he did not but he knew where to find it. After finding a hanger, the woman asked relator if he would get her some cocaine. He said yes. They returned to Interstate 44, drove into the City, eventually stopping at a house near West Florissant and Marion Streets.

Relator, his friend and the woman went to the house to get cocaine. They were told to call from a phone down the street. The woman told relator she was uncomfortable and asked to go back to the car. She went back to the car, and, after giving his friend the money to buy the cocaine, relator also went back to the car. Relator and the woman talked for a time and then engaged in consensual oral sex and intercourse.

Relator did not hold a gun to the woman. He did not own a gun and had none in his car. He did not order or force her to engage in sex. Subsequently, he drove her back to the location of her car, then to her house where he and the woman exchanged telephone numbers. She gave him a kiss and went into her house.

### Jury's Verdict

To find relator guilty on the kidnapping charge, the jury was required to find: (1) relator removed the complainant from Interstate 44 and Laclede Station Road, (2) the removal was by means of forcible compulsion and was without the complainant's consent, and (3) the removal was for the purpose of facilitating rape. (See Appendix I) On the armed criminal action charge, the jury was required to find that relator kidnapped the complainant as submitted in the kidnapping verdict director and that relator committed that offense using a deadly weapon. (See Appendix II).

On the kidnapping charge, both the complainant and relator, by their testimony, agreed that she was "removed" from her original location. Thus, we may not conclude the jury acquitted on that basis. *Ashe*, 397 U.S. at 444–445, 90 S.Ct. at 1194–95. There was, however, disagreement and conflicting testimony on the issue of the complainant's consent to the "removal".

The state showed lack of consent by the complainant's testimony that she asked relator to take her back to her car but he refused to and held a gun to her. This evidence was countered by relator's testimony that the complainant wanted some cocaine and he drove into the City to get her some at her request. If the jury chose

to believe relator's testimony on this issue, it could have acquitted because it found the complainant consented to being taken to the City.

Under the facts of this case, if the jury acquitted because it believed relator on this point, the verdict collaterally estops the state from charging relator for the alleged following rape and sodomy.

An element of both these charges is that the acts be done without the victim's consent by the use of forcible compulsion. Sections 566.030 and 566.060. The only forcible compulsion here is relator's alleged use of the gun and his alleged threat of physical harm if complainant did not comply with his directions. Relator, according to complainant's testimony, held the gun on her the entire time. The only time relator was violent was when he drew his gun and grabbed complainant, she testified. Under the facts of this case, the only way the jury could have found complainant consented was to have believed relator did not use a gun or threaten complainant.

The acquittal bars the subsequent prosecution because, under the facts of this case, the alleged compulsion the state would need to rely on in the subsequent prosecution is the same compulsion the jury found did not exist. As we stated above, *Ashe* requires us to examine the prior proceedings rationally and realistically, not in a pristinely logical and theoretical sense. The complainant's testimony establishes only one continuing act of forcible compulsion by relator. If the first jury acquitted because it found the forcible compulsion lacking, the state may not in any later trial prove any charges relying on the existence of this compulsion. *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194.

We must, however, examine the possibility that the jury acquitted on some other basis than the complainant's consent. The only remaining possibility is that the jury found relator did not have the purpose of facilitating the commission of rape when he kidnapped complainant.

We do not believe the jury, rationally, could have found relator took complainant

from the county by force without her consent but did not have the purpose to facilitate the commission of rape. Relator's theory of defense was one of consent to the kidnapping and subsequent sexual relations. There is no evidence whatsoever from which a jury could conclude relator removed complainant by forcible compulsion for any reason other than to facilitate commission of a rape. The jury would have had no basis to conclude the removal was for any purpose other than to facilitate the rape, especially where, as here, both complainant and relator agree there was sexual contact between the two. Any other conclusion could follow only from a "hypertechnical and archaic approach" eschewed by *Ashe* and not from an inquiry "set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194.

*Ashe* and our courts in Missouri recognize that the applicability of collateral estoppel is a fact specific and fact sensitive question. *E.g. State v. Rodden*, 728 S.W.2d 212, 220 (Mo. banc 1987); *State v. Booker*, 540 S.W.2d 90, 93 (Mo.App.1976). Defendant's first trial was essentially a one-on-one swearing-match between complainant and defendant. Complainant said she was taken from the County at gunpoint and raped and sodomized in the City at gunpoint. Defendant denied that he used compulsion either to remove her from the County to the City or to engage in sexual relations. Thus, rationally, the only issue tried by the parties, in the first case, was whether defendant used force to effectuate a kidnapping or whether the complainant's removal was consensual. The operative facts considered by the jury for this determination constituted one inextricably intertwined continuum. There simply is no rational basis for a finding of no forcible compulsion in the abduction alleged in the first case, but the presence of such compulsion in the rape and sodomy, alleged in the present case.

By this opinion, we do not intend to adopt and do not adopt either the "same transaction" test or the "same evidence" test used by some for double jeopardy analysis. These tests, consistently, have been rejected by Missouri Courts and the United States Supreme Court. *See, e.g. State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977); *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 2094, 109 L.Ed.2d 548 (1990). We merely hold that, under the facts of this case, to prove the element of forcible compulsion in the rape and sodomy charges against relator, the state will have to prove operative facts the first jury found absent. This the state may not do.

Writ of prohibition made permanent.

SMITH and STEPHAN, JJ., concur.

### APPENDIX I

#### Instruction No. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about November 22, 1987, in the County of St. Louis, State of Missouri, the defendant removed [Complainant] from I–44 and Laclede Station Road, and

> Second, that such removal was by means of forcible compulsion and was without the consent of [complainant], and

> Third, that defendant removed [complainant] for the purpose of facilitating the commission of rape,

then you will find the defendant guilty under Count I of kidnapping.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "forcible compulsion" means either physical force that overcomes reasonable resistance or a threat, expressed or implied, that places a person in reasonable fear of death, serious physical injury, or kidnapping.

As used in this instruction, the term "forcible rape" means a person commits the crime of forcible rape if he has sexual intercourse with another person to whom

he is not married, without that person's consent by the use of forcible compulsion.

If you do find the defendant guilty under Count I of kidnapping, you will assess and declare the punishment at imprisonment for a term of years fixed by you, but not less than five years and not to exceed fifteen years.

## APPENDIX II

### Instruction No. 7

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of kidnapping, as submitted in Instruction No. 5, and

Second, that defendant committed that offense by, with or through the use, assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count II of armed criminal action.

As used in this instruction, the term "deadly weapon" means any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury may be discharged.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty under Count II of armed criminal action, you will assess and declare the punishment at a term of imprisonment of not less than three years.