STATE of Missouri, Respondent,

v.

Richard E. CURTIS, Appellant.

Richard E. CURTIS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 49700, WD 50751.

Missouri Court of Appeals,
Western District.

Jan. 30, 1996.

Motion for Rehearing and/or Transfer
Denied April 2, 1996.

Application to Transfer Denied
May 28, 1996.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, C.J., P.J., LOWENSTEIN, J. and SHANGLER, Senior Judge.

FENNER, Chief Judge.

Richard Edwin Curtis appeals from his conviction and 30 year sentence as a prior offender, persistent offender, and three-time offender for the forcible rape of C.C., pursuant to § 566.030, RSMo Supp.1993.

Appellant was initially tried in the Circuit Court of Boone County, Missouri, on May 17–18, 1994, on charges of armed criminal action and forcible rape. This jury acquitted appellant of armed criminal action but could not reach a verdict on the forcible rape charge. On May 26, 1994, appellant was found guilty of forcible rape after a second jury trial on that charge only and received the aforementioned prison sentence. Appellant timely filed his notice of appeal of this judgment.

On appeal, appellant claims that the trial court erred when it denied his motion *in limine* and overruled his subsequent objections to prohibit the introduction of evidence regarding the use or presence of a knife as part of the alleged rape during the second trial, arguing that the use of a knife was an ultimate issue decided by the jury when it acquitted appellant on the ·charge of armed criminal action in the first trial that was precluded by collateral estoppel from being reintroduced in the second rape trial. Appellant also claims that there was insufficient evidence to support the conviction on the forcible rape charge because the State did not establish that he had sexual intercourse with C.C. by forcible compulsion.

Because this appeal involves a challenge to the sufficiency of the evidence, this court accepts as true all the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all contrary evidence and inferences. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). The appellate court neither weighs the evidence nor determines reliability or credibility of witnesses, but instead limits its determination to whether there is substantial evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. *State v. Idlebird*, 896 S.W.2d 656, 661–62 (Mo.App.1995); *Silvey, id.*

The evidence reveals that on October 8, 1993, C.C. was living in an apartment with her young daughter in Columbia, Missouri. She arose at approximately 5:30 that morning to get ready for work, and had showered and dressed when she heard a knock on her door at approximately 6:00 a.m. She went to the door and asked who it was. The voice on the other side replied "Curtis." She recognized the voice as that of the appellant, who was a friend and former schoolmate.

After being let in the apartment, appellant informed C.C. that his car had broken down and asked to use the telephone. C.C. overheard appellant using the phone and asking the person on the line if he or she would come get him. C.C. hung up the phone after she heard it beeping because appellant had not hung it up correctly when he finished his phone call. She asked appellant if he was working and he replied that he was not.

At this point, as appellant leaned forward toward her bathroom mirror to finish putting on her makeup, she felt someone behind her. She looked in the mirror and discovered that the appellant had placed a knife to her throat, and had his left arm around her waist. She described the knife as a black-handled knife with a shiny, silver blade. C.C. asked appellant why he was doing this, and he responded by telling her to shut up.

Appellant then forced C.C. from her bathroom, down the hallway, and into her kitchen. He began fumbling through the drawers while maintaining the knife against C.C.'s throat, looking for what C.C. assumed to be a bigger knife. To distract appellant, C.C. told him that she had some money in her purse, which was in her bedroom. Appellant forced C.C. back down the hallway to the bedroom to retrieve the purse, all the while maintaining his hold on her. Appellant then returned to the living room with C.C. held at knife point and dropped the purse on the entertainment center.

Appellant then dragged C.C. to the front door and locked it. Appellant turned around, and with the knife still positioned at C.C.'s throat, began to kiss her on the neck. Appellant told C.C. to take her pants off and she began to do so. Before she completely removed them, appellant used his foot to pull them the rest of the way down. Appellant then laid C.C. on the floor using his right arm and braced himself as he laid down with his left arm. Using his left hand, with his right hand still holding the knife to C.C.'s neck, appellant pulled his own pants down and attempted to place his penis in C.C.'s vagina. He was unable to achieve penetration, so he spit on his left hand and rubbed his saliva on C.C.'s vagina. Appellant then penetrated C.C. and began to engage in sexual intercourse with her. After four or five minutes, appellant withdrew and released C.C. from his grasp, instructing her to get up and pull on her pants.

Appellant then told C.C. to sit down at her dining room table. He lit a cigarette, sat down near C.C. and asked repeatedly if she was going to "tell on him." C.C. promised she would not tell on appellant and eventually convinced him to leave her apartment by

reiterating the promise. C.C. immediately locked the door and called 911 upon appellant's exit. Police responded shortly thereafter, though C.C. was reluctant to open the door for fear that it was appellant returning to her apartment. She was trembling and crying, and was unable to speak because she was so upset when police first arrived. Finally, she told the police that a male acquaintance, appellant, had come to her residence and raped her.

While officers questioned C.C., another officer observed a male drive up and park in front of the apartment complex. He walked toward C.C.'s apartment until the officer stopped him. This individual turned out to be appellant, who told the officer his name and that he lived at C.C.'s apartment. Appellant was placed under arrest, and a search of his person did not reveal any weapons.

C.C. was taken to University Hospital where she was examined, though she remained "extremely irrational and crying and difficult to communicate with." A physical examination revealed no signs of physical injury, though seminal fluid was discovered in her vagina. Subsequent DNA testing revealed that appellant was the source of the semen. At trial, appellant testified in his own defense and admitted having sex with C.C. that morning, but claimed that it was consensual and that he did not use force and did not rape her.

## I. ADMISSION OF EVIDENCE OF THE KNIFE

■ Appellant claims the trial court erred in overruling his motion *in limine* and subsequent objections to the introduction of the use of a knife in connection with the alleged rape during the course of the second trial because the jury in the first trial, in acquitting appellant on the charge of armed criminal action, necessarily determined the issue of the use of the knife in appellant's favor. Appellant argues the introduction of such evidence violated the doctrine of collateral estoppel that is derived from the Fifth Amendment prohibition against double jeopardy. *See Ashe v. Swanson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

The State contends that collateral estoppel does not apply to this case because a jury's verdict on one count of a multi-count information or indictment has no collateral estoppel effect on the other, remaining counts. *See State v. Dominique,* 619 S.W.2d 782, 786 (Mo.App.1981). The difficulty with this case and the difference between it and the cases cited by the State is that there were two separate trials required to convict appellant of rape, with the jury being unable to reach a verdict on the rape charge in the first trial. For the purposes of analysis in this appeal, we will assume the doctrine of collateral estoppel will apply if the requisite elements are satisfied.

In the criminal context, appellant is correct in stating that the doctrine of collateral estoppel prevents the State from prosecuting an offense when a fact issue which would constitute an element of the second offense was decided in favor of the defendant at a prior proceeding, *State ex rel. Hines v. Sanders,* 803 S.W.2d 649 (Mo.App.1991), and that the State is prohibited, at a second prosecution, from relitigating an issue by attempting to prove a fact which was necessarily decided in the defendant's favor at the first trial. *State v. Cannady,* 670 S.W.2d 948, 951 (Mo.App.1984). Appellant claims it is the second aspect of the doctrine of collateral estoppel that this case deals with and that the trial court violated in denying his motion and overruling his objections.

For the purpose of determining whether collateral estoppel applies to prohibit the State from introducing evidence to prove a given fact, the *Cannady* court divided fact issues into two types—ultimate fact issues and evidentiary fact issues. An *ultimate fact issue* is one that the prosecution necessarily failed to prove, which must have been the cause of the acquittal at the first proceeding. *Cannady,* 670 S.W.2d at 951–52. An *evidentiary fact issue* is one that the prosecution may, not must, have failed to prove at the prior trial, leaving open the possibility that the jury acquitted on other grounds. *Id.* While Missouri law bars relitigation of an ultimate fact issue in a subsequent proceeding, the use of evidentiary facts

in subsequent proceedings is allowed *Id.* at 952.

Appellant's argument relies on the contention that the acquittal on the charge of armed criminal action necessarily implied that the jury concluded appellant did not use a knife when he allegedly raped C.C. However, the ultimate fact determined by the jury in the first trial under the verdict-directing instruction on the offense of armed criminal action required a finding that appellant had committed the crime of forcible rape "by, with, or through the use, assistance, or aid of a *dangerous instrument.*" The term *dangerous instrument* was defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Section 556.061(9), RSMo 1994.

There is no indication that the knife in question was ever recovered or introduced into evidence. There was also some question raised at the first trial as to whether C.C. may have described the knife used by appellant as a "folding pocket type knife" at the preliminary hearing. This question was heightened by the fact that C.C. indicated she was not sure whether or not the knife the appellant used was a pocket knife at the first trial. Furthermore, there was testimony that appellant was searching for a bigger knife and that C.C. was concerned about appellant getting a bigger knife. There was no evidence of C.C.'s being cut with the knife and the evidence was not clear as to the size or type of knife used.

Based on these facts, we cannot say that the jury in the first trial decided the ultimate issue that appellant did not have a knife when he allegedly raped C.C. Under the facts presented, the jury in the first trial could have merely found that the knife as used was not a "dangerous instrument." The jury did not necessarily find that there was no knife involved to find appellant not guilty of armed criminal action.

The doctrine of collateral estoppel did not bar evidence of appellant's using a knife in connection with the rape of C.C. at the second trial, as it cannot be conclusively said that the jury in the first trial concluded

appellant did not use a knife in acquitting him on the charge of armed criminal action. The trial court did not err in admitting evidence of appellant's use of a knife in the commission of the alleged rape of C.C. Point denied.

## II. *SUFFICIENCY OF THE EVIDENCE*

■ For his second point on appeal, appellant contents that the trial court erred when it denied his motions for judgment of acquittal at the close of the State's case and upon submission of the case to the jury because the State failed to prove that he had sexual intercourse by the use of forcible compulsion with C.C. Appellant's argument rests on the contention that the evidence of the use of the knife should have been excluded by collateral estoppel, thus leaving no other evidence of "forcible compulsion" as defined in MAI–CR 3d 320.02.1B and as required by section 566.030(1), RSMo 1994.

Appellant has essentially placed all his eggs in the basket of his collateral estoppel claim. We need only determine that there was substantial evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt to uphold appellant's conviction. *Idlebird,* 896 S.W.2d at 661–62; *Silvey* 894 S.W.2d at 673. Because we determined that collateral estoppel would not apply to exclude evidence of the use of the knife at the second rape trial, and such evidence was admitted, there was sufficient evidence to support the element of "forcible compulsion" required to convict appellant on the rape charge. The trial court did not err in denying appellant's motions for judgment of acquittal. Point denied.

The judgment of the trial court is affirmed in all respects.

All Concur.